RAILROAD COMPANY *v.* VANCE.

A railroad corporation of Indiana, by a written contract of lease with a railroad corporation of Illinois, acquired the right and assumed the duty of managing and carrying on the business of the main line and a branch road of the latter company. The lease was confirmed by an act of the legislature of Illinois, which declared that said lessee should be a railroad corporation in the latter State, and possess as large powers as were possessed by the lessor, and such other powers as are usual to railroad corporations. The State board for the equalization of taxes in Illinois made an assessment on the capital stock and franchises of the lessor corporation, over and above its tangible property, for the roads which passed from its control by virtue of the lease, and then assigned to the several counties so much of the assessment as was in the same proportion to the whole as the length of track within their respective limits bore to the entire length of the leased roads; the taxes due upon such assessment being charged to and to be collected from the company which, with the consent of the State, was entitled to have, and did have, exclusive control and management of such roads. *Held,* that the mode adopted by the State board was in substantial conformity to the laws of Illinois.

APPEAL from the Circuit Court of the United States for the Southern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Joseph E. McDonald* and *Mr. R. P. Ranney* for the appellant.

*Mr. James K. Edsall*, Attorney-General of Illinois, *contra*.

MR. JUSTICE HARLAN delivered the opinion of the court.

Upon the filing of the bill in this case by the Indianapolis and St. Louis Railroad Company, suing as a corporation organized under the laws of Indiana, against sundry county tax-collectors in the State of Illinois, a temporary injunction was granted, restraining the defendants from levying on the property, or taking any steps to collect taxes upon the capital stock, of the complainant, for the years 1873, 1874, and 1875, under or by virtue of any warrants in their hands for that purpose.

The defendants, denying that there had been any assessment upon the capital stock of the complainant, insisted that the taxes in question were due upon assessments, rightfully made by the State board of equalization of Illinois upon the capital

stock and franchises of an Illinois corporation, the St. Louis, Alton, and Terre Haute Railroad Company, over and above its tangible property, for so much of its main line and the Alton branch thereof as were leased to, and operated in Illinois by, the Indianapolis and St. Louis Railroad Company, to whom, defendants claimed, the taxes in question were, therefore, properly charged.

The cause, by agreement of parties, was submitted upon the pleadings and exhibits filed; and, upon final hearing, a decree was rendered dissolving the injunction and dismissing the bill.

From that decree this appeal is prosecuted.

The essential facts in the case are these: The Constitution of Illinois requires the General Assembly of that State to provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property, — such valuation to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct. Persons or corporations owning or using franchises and privileges are to be taxed in such manner as the General Assembly shall from time to time direct, the tax, however, to be uniform as to the class upon which it operates.

In pursuance of the Constitution, the General Assembly, in the year 1872, passed a general revenue law providing for the assessment of property, and prescribing the mode for the collection of taxes. It contained specific directions for the assessment of the different kinds of property owned by railroad companies, their visible or tangible property to be assessed under the heads of "railroad track," "rolling-stock," &c. In reference to their capital stock, the statute provided that the "capital stock of all companies and associations" (other than banking associations organized under the general laws of the State) "now or hereafter created under the laws of this State shall be so valued by the State board of equalization, as to ascertain and determine respectively the fair cash value of such capital stock, including the franchises, over and above the assessed value of the tangible property of such company or association," — that value to be ascertained under such rules and principles as the board might deem equitable and just.

The rule adopted by the State board was this: To the market or fair cash value of the shares of capital stock add the market or fair cash value of the debt of the corporation, (excluding that created for current expenses), and from this amount deduct the aggregate amount of the equalized or assessed valuation, as ascertained by the board, of all the tangible property of the corporation ; the amount remaining to be taken as the fair cash value of the capital stock, including the franchise, which the board is required to assess against such corporation.

At the annual meetings of the State board held in each of the years 1873, 1874, and 1875, for the purpose of examining the abstracts of property assessed for taxation in the several counties, as returned to the auditor of State, and for the purpose, also, of equalizing assessments, the question arose as to the mode in which the capital stock of the St. Louis, Alton, and Terre Haute Railroad Company should be assessed for taxation.

The difficulties which attended an intelligent discharge of that duty will be comprehended by a statement of the relations of that corporation to the complainant.

On the 11th of September, 1867, the complainant, by a written contract of lease with the St. Louis, Alton, and Terre Haute Railroad Company, acquired the right and assumed the duty of managing and carrying on, for the term of ninety-nine years, commencing June 1, 1867, the business of the principal or main line of the latter, one hundred and eighty-nine miles in length, extending from Terre Haute, Ind., to East St. Louis, Ill., and also of the Alton branch, four miles in length, subject to certain prescribed terms and conditions.

The tenth article of the lease is as follows : —

"The said party of the first part (the complainant), its successors and assigns, shall and will, at all times during the term aforesaid, pay or cause to be paid any and all taxes, assessments, and imposts of whatever kind which shall or may at any time during such term be charged, levied, assessed, or imposed upon the said main line of said railroad and the said Alton branch thereof, or upon either or any part of either of the said railroads or their appurtenances, or upon any business or transactions done upon them or either of

them, or upon any income arising therefrom, or upon any property whatsoever, the use of which during said term is hereby agreed to be furnished to the party of the first part, or which may be charged against or imposed upon the said party of the second part (the St. Louis, Alton, and Terre Haute Railroad Company), its successors or assigns, for or on account of its or their ownership of said railroads, or either or any part of either thereof, or of such property or any part thereof: *Provided, however,* that nothing in this contract contained shall be so construed as to render the party of the first part in any way liable for the tax specifically upon the income of the holders of the bonds or stocks of the party of the second part."

Under this lease the complainant took possession of all the property connected with or essential to the business of the principal line and the Alton branch of the lessor.

Some doubt having been expressed as to the validity of the lease under the laws of Illinois, an act of the General Assembly of that State, approved March 11, 1869, directs that the lease "be and stand confirmed according to the terms" thereof; and the second section provides : —

"The said lessees, their associates, successors, and assigns, shall be a railroad corporation in this State, under the said style of 'The Indianapolis and St. Louis Railroad Company,' and shall possess the same or as large powers as are possessed by said lessor corporation, and such other powers as are usual to railroad corporations. Said Indianapolis and St. Louis Railroad Company may, and are hereby authorized to, extend said line of road from any point on the same between the cities of Pana and Litchfield, on said road, or from either of said points westward to the Mississippi River opposite Louisiana, or any point below, not exceeding fifteen (15) miles, in the State of Missouri, with a branch thereof to the city of Quincy, in the State of Illinois, and the same to connect with the railroad bridge over said river at said city of Quincy."

At its annual meetings, in 1873, 1874, and 1875, the State board made assessments upon the capital stock and franchises of the various railroad companies of the State over and above their tangible property respectively. Having ascertained the fair cash taxable value of the capital stock, including the franchise of the St. Louis, Alton, and Terre Haute Railroad Company, without any reference to the lease made by the latter, it

fixed the sums of $2,918,184, $1,125,139, and $1,004,416 as the proportion of such valuation which should be distributed for the years 1873, 1874, and 1875, respectively, to the counties on the line of the leased railroads, assigning to each county, in conformity to the rule prescribed by the statute, such proportion of those annual assessments as the length of line in such county bore to the entire length of the leased railroads in the State. The assessments thus distributed to the several counties through which the leased railroads passed were charged to the Indianapolis and St. Louis Railroad Company. The balance of the assessment upon the capital stock and franchise was distributed to the counties upon the lines which the St. Louis, Alton, and Terre Haute Railroad Company operated, and were charged directly against it.

While the officers of State deny that the assessments were upon the capital stock of the Indianapolis and St. Louis Railroad Company, they evidently intend that the warrants based upon those assessments shall be levied upon such of the leased property as by the laws of Illinois can be seized for the payment of taxes against corporations created under the laws of that State.

Whether the assessments made by the State board, and the intended levy by the county collectors of the warrants in their hands, are in accordance with the laws of Illinois, are the fundamental questions in this case.

In support of the negative of these propositions, the counsel for the complainant insist that the Indianapolis and St. Louis Railroad Company is a corporation created by the laws of Indiana, with stock subscribed and held under the authority of that State, and with an organization there and not elsewhere; that neither before nor after the passage of the act of March 11, 1869, did the stockholders or officers of the Indianapolis and St. Louis Railroad Company organize, subscribe for stock, elect officers, or do any other act to become a corporation under its provisions; that no capital stock of the corporation referred to in that act was ever subscribed by the lessee therein referred to, and that the complainant owns no capital stock except that owned by it as a corporation existing under the laws of Indiana; that the act of March 11, 1869, construed in reference to its objects intended to be attained, and the constitutional powers

of the General Assembly of Illinois, did not make the Indianapolis and St. Louis Railroad Company a corporation of that State, but amounts only to a license to an Indiana corporation to exert its corporate powers in Illinois, by holding and operating a line of leased railroads within her limits.; that the State board had no authority to assess the capital stock and franchise of an Indiana corporation; and that the property managed and controlled by the latter, whether acquired prior to or held under the lease of 1867, could not be seized to pay taxes due upon any assessment of the capital stock of the St. Louis, Alton, and Terre Haute Railroad Company.

These propositions, presenting, it must be conceded, questions of some difficulty, will be noticed in the progress of this opinion.

There can be no doubt that the Illinois revenue statute of 1872 was intended to meet the provisions of the State Constitution, which required such legislation as would subject to taxation, according to its value, every kind of property, whether owned by individuals or corporations. It was not supposed that the constitutional duty imposed upon the General Assembly would be discharged by taxing simply the tangible property of railroad companies. Hence a tax was imposed upon their capital stock, including the franchise, over and above their tangible property. " Capital stock," within the meaning of the Illinois statute, does not mean shares of stock, but " the aggregate capital of the company;" which includes " the value of the right to use this tangible property in a special manner, for purposes of gain." We so held in *State Railroad Tax Cases* (92 U. S. 575), where the provisions of this revenue statute were critically examined. It is to be observed in this connection that the State board of equalization was not authorized to assess the capital stock of companies or associations managing property or engaging in business in Illinois, unless they were created under the laws of that State. Such seems to be the settled construction of that statute by the Supreme Court of Illinois. In *Western Union Telegraph Company* v. *Leib* (76 Ill. 172) this language is held: " We are unable to find any authority in the act for assessing the capital stock of companies or associations doing business in the State, but incorporated under the laws of another State.

The care manifested by the legislature, whenever any allusion is made to the assessment of capital stock, to limit it to corpora-tions created by or under the laws of the State, is so clear and positive, that no doubt can exist as to the purpose intended."

When the lease of 1867 was executed, the capital stock, including the franchise, of the lessor corporation was taxable over and above its tangible property, assessed under the head of railroad track, &c. But, upon the execution of that lease, and its confirmation by the State, that corporation no longer enjoyed the right to use the leased property in a special manner for the purposes of gain. That right for a fixed period, and with the declared consent of the State, passed to the lessee corporation, and became thereafter a part of its aggregate capital, not reached by taxation upon its tangible property operated in Illinois, but assessable only under the head of capital stock and franchise. The taxable value of the capital stock and franchise of the lessor was diminished by the amount which the State board should ascertain to be the value of that right. By the confirmation of the lease, according to its terms, — among which was the obligation of the lessee to pay all taxes, assessments, and imposts, of whatever kind, charged against or imposed upon the lessor for or on account of its ownership of the leased lines, — the State was estopped from collecting, as against the lessor, any taxes assessed upon that right. This, in our opinion, is a fair construction of the lease, and the act of March 11, 1869.

The question whether the State can require any other corporation to respond to the taxation, which, but for the lease and the act of March 11, 1869, would have been assessable against and collectible from the St. Louis, Alton, and Terre Haute Railroad Company, depends for its solution altogether upon the construction to be given to that act.

Upon the theory of complainant's counsel, the State of Illinois cannot make the leased property liable to these assessments upon capital stock and franchise under any form of assessment, since, as they claim, that property is managed and operated by a corporation deriving its existence from, and holding its stock and maintaining its organization under, the laws of Indiana, and not under the laws of Illinois.

In this view we cannot concur. That act was something

more than a mere license to an Indiana corporation to exert its corporate powers and enjoy its corporate rights and privileges in another State. Such would undoubtedly have been the case had the act closed with the first section, as it would have done, had the General Assembly intended nothing more than to confer upon the corporation of another State authority to extend its operations by carrying on railroad business in Illinois. We cannot thus restrict the effect of the act, without disregarding wholly the ordinary meaning of the plain words of its second section, which declares that the lessees, their associates, successors, and assigns, shall be a railroad corporation in the State of Illinois. It does more: it gives the style by which that corporation shall be known. Still further, it does not authorize the complainant corporation to exercise, in Illinois, the corporate powers granted by the laws of Indiana; but confers, by affirmative language, upon the corporation, which it declares shall be a railroad corporation in Illinois, " the same or as large powers as are possessed " by an Illinois corporation, the St. Louis, Alton, and Terre Haute Railroad Company, and, in addition, such other powers as are usual to railroad corporations. The Indianapolis and St. Louis Railroad Company, as lessee of the St. Louis, Alton, and Terre Haute Railroad Company, was thus created, by apt words, a corporation in Illinois. The fact that it bears the same name as that given to the company incorporated by Indiana cannot change the fact that it is a distinct corporation, having a separate existence derived from the legislation of another State. After the passage of the act of March 11, 1869, the property described in the lease of 1867 became, at least for purposes of taxation in Illinois, that of the corporation created by that act as a railroad corporation in that State.

But it may be suggested that the utmost which can be claimed for the act is, that, without creating a new corporation in Illinois, it only made the complainant, as an Indiana corporation, a corporation of the State of Illinois. It was clearly competent for the General Assembly to have done this, as held in *Railroad Company* v. *Harris* (12 Wall. 65), where the court said: " Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a

corporation of its own, *quo ad* any property within its territorial jurisdiction." But we do not see how this view gives any support to the position of the complainant. For, had the act, after confirming the lease of 1867, declared in terms that the lessee corporation, as organized and conducted in Indiana, should be deemed a corporation of Illinois, we should have felt bound to hold that, as to the property obtained by and operated under the lease within that State, it was, in the sense of the Illinois revenue statute of 1872, a corporation "created under the laws" of that State, subject to taxation upon its capital stock, including its franchise, so far as such stock and franchise were fairly represented by the leased property.

*Railroad Company* v. *Harris* (*supra*) is relied upon by counsel, as sustaining their construction of the act of 1869; but there is no substantial analogy between that case and this. The Virginia act did not purport to make the Maryland corporation a corporation of Virginia, nor did it contain any language from which could be inferred a purpose to create thereby a new and distinct corporation in Virginia. On the contrary, the Illinois act of 1869 declares, in express terms, that certain parties shall be a railroad corporation in that State, under a designated name, with authority to exercise, not the powers which had been granted by the State of Indiana to another corporation of the same name, created under the laws of that State, but the same powers which were possessed by a corporation theretofore created under the laws of Illinois. We are unable to perceive any conflict between the views expressed in that case and those announced in this opinion.

Some stress is laid upon the fact that there was no formal subscription to the capital stock, or any formal organization of the corporation created by the act of March 11, 1869. Notwithstanding the absence of such subscription and organization, we are of opinion that the State board had the right, for the purposes of taxation, to regard the corporation authorized by that act to exercise the powers of the lessor corporation, as a corporation created under the laws of Illinois.

There is still another objection earnestly urged against this construction of the act of March 11, 1869. It is said that, being a special act, and containing nothing to show that the corpora-

tion therein named might not have been organized under the general laws of Illinois, the act cannot be construed as creating a new corporation, without bringing it into conflict with the following clause of the Illinois Constitution of 1848, then in force; viz., " Corporations not possessing banking powers or privileges may be formed under general laws, but shall not be created by special acts, except for municipal purposes, and in cases where, in the judgment of the General Assembly, the objects of the corporation cannot be attained under general laws."

The argument is, that a special act creating a corporation is in violation of that constitutional provision, unless it appears affirmatively from the act, or from the recorded proceedings of the General Assembly, that the latter was of opinion that the objects of the corporation could not be attained under the general laws. In the absence of any decision upon this question by the Supreme Court of Illinois, we should give weight to this argument. But this precise point was made in the case of *Johnson* v. *Joliet & Chicago Railroad Co.*, 23 Ill. 207. In that case, it appears that a special act creating a railroad company, passed in 1855, contained no statement of the inability of the General Assembly to accomplish the objects of the incorporation under the general law. The court said : " It is too late now to make this objection, since, by the action of the General Assembly under this clause, special acts have been so long the order of the day, and the ruling passion of every legislature which has been convened under the Constitution, until their acts of this description fill a huge and misshapen volume, and important and valuable rights claimed under them. The clause has been wholly disregarded, and it would now produce far-spread ruin to declare such acts unconstitutional and void. It is now safer, and more just to all parties, to declare that it must be understood that, in the opinion of the General Assembly, at the time of passing the special act, its objects could not be attained under the general law; and this without any recital by way of preamble."

That decision furnishes an answer to the objection under consideration.

We come now to the examination of the mode in which the

assessments were made. Looking into the proceedings of the State board, so far as they have been laid before us, we meet with some difficulty in understanding the precise theory upon which the assessments of 1873, 1874, and 1875 were made. But for the lease made in 1867, the way of the board would have been free from all embarrassment. The assessment, in that event, would have been upon the capital stock, including the franchise, of the St. Louis, Alton, and Terre Haute Railroad Company, over and above any tangible property it owned and operated. But, as heretofore shown, after the confirmation of the lease, the capital stock and franchise of that corporation were diminished in value to whatever extent their taxable value was represented by the leased lines of railroad. Technically, the assessment under the head of capital stock and franchise should have been upon the capital stock and franchise of the corporation created by the act of March 11, 1869. But that corporation had no defined amount of capital stock separate from that of the Indiana corporation of the same name. The State board, therefore, made an assessment upon the capital stock of the lessor corporation, for that portion of the lines of railroad which passed from its control in virtue of the lease of 1867, and then distributed such assessment among the various counties on the lines of the leased railroads, in the proportion that the extent of track in the respective counties bore to the whole length of the leased lines in the State; the taxes due upon such assessment being charged to and to be collected from the Indianapolis and St. Louis Railroad Company, which, with the consent of the State of Illinois, as expressed in the act of March 11, 1869, was entitled to have, and did have, exclusive control and management of such leased lines.

The mode thus adopted by the State board was, as we think, in substantial conformity to the laws of Illinois, and affords the complainant no just ground of objection.

The complainant sues as a corporation, created by the laws of Indiana, upon the ground that the assessment was upon its capital stock, and that the purpose of the county collectors was to seize its property. But the State officers deny that any assessment was made, or intended to be made, upon its capital stock. Clearly, the county collectors have no right to levy the

warrants in their hands upon any property which belongs to the Indiana corporation, as distinguished from the Illinois corporation of the same name. But they have the right, for the reasons heretofore given, to subject to the payment of the taxes in question the property which the corporation, created by the act of 1869, is operating and managing in that State, as lessee of the St. Louis, Alton, and Terre Haute Railroad Company. The assessment made by the State board is, in every just sense, an assessment upon the capital stock and franchise of an Illinois corporation; to wit, the Indianapolis and St. Louis Railroad Company, lessee under and by authority of the act of March 11, 1869, of the St. Louis, Alton, and Terre Haute Railroad Company.

We perceive no error in the decree to the prejudice of the complainant.

*Decree affirmed.*

MR. JUSTICE FIELD and MR. JUSTICE HUNT did not hear the argument in this case, nor participate in the decision.