SEATTLE GAS & ELECTRIC CO. v. CITIZENS' LIGHT & POWER CO.

(Circuit Court, D. Washington, N. D. June 12, 1903.)

No. 1,071.

1. CORPORATIONS—POWERS—LIMITATION BY CHARTER.
    A New Jersey corporation organized under the general corporation law, and not under the gas act, being without charter power to engage in the business of manufacturing and selling gas to consumers, under the laws of the state as construed by its Supreme Court, such a corporation is equally without power to engage in such business in a different state.

2. SAME—ACTS ULTRA VIRES—RIGHT OF PRIVATE LITIGANT TO QUESTION.
    Where a corporation, in exercising powers beyond its charter by laying gas mains in the streets of a city, although with the implied license of the public authorities, creates a public nuisance which will result in special and irreparable injury to a private party, such party may invoke its want of charter power as the basis for relief in equity by injunction.

In Equity. Bill by the Seattle Gas & Electric Company, a corporation of the state of Washington, having a franchise for supplying gas to the inhabitants of the city of Seattle, for an injunction to restrain a rival company from interfering with the mains and service pipes by which the complainant distributes illuminating gas throughout the city. Heard upon the complainant's application for an injunction pendente lite, and upon a special demurrer to part of the bill of complaint. Demurrer overruled, and injunction granted.

Burke, Shepard & McGilvra, E. C. Hughes, and Bausman & Kelleher, for complainant.

H. R. Clise, John B. Hart, and Preston, Carr & Gilman, for defendant.

HANFORD, District Judge. The amended bill of complaint sets forth that by a certain ordinance of the city of Seattle passed in the year 1873, and re-enacted, with amendments, in the year 1881, a franchise was granted for the construction and maintenance of a plant for the manufacture of gas, and for the distribution thereof throughout the city by means of pipes to be laid in the streets of Seattle and any additions thereto. Said ordinances also granted a monopoly for a limited term of 25 years from the 6th day of June, 1873. By limitation of time, the exclusive right to manufacture and supply illuminating gas within the city of Seattle has ceased; but it is only the exclusive feature of the franchise which has been extin-

*Bill dismissed on appeal on complainant's motion.

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 1515, 1516, 2532.

guished, the complainant's right as successor of the original benefi-
ciaries named in the ordinances referred to being perpetual—a per-
petual, nonexclusive franchise to continue the business and use the
streets having been confirmed to the complainant, as the assignee
and successor of the beneficiaries named in said ordinances, by a de-
cree of this court, which is set forth in the amended bill of complaint.

The defendant is a corporation organized and existing under cer-
tain general statutes of the state of New Jersey providing for the
formation of corporations, and it has undertaken to supply illumi-
nating gas in the city of Seattle in competition with the complain-
ant, and for that purpose it has placed within the streets of the city
a system of mains and service pipes parallel to and crossing the
pipes of the complainant's system.  By this suit the complainant at-
tacks the right of the defendant to use the streets of Seattle for the
purpose of laying gas pipes therein, on two grounds, viz.:  First,
the defendant corporation is not authorized by its charter to en-
gage in the gas business anywhere, and all of its transactions as a
manufacturer and supplier of illuminating gas are ultra vires; and,
second, the defendant has pursued and is pursuing systematically a
vexatious course towards the complainant by excavating the streets
and laying gas pipes parallel to and in such near proximity to the com-
plainant's pipes as to cause serious and unnecessary injury to the com-
plainant's system, and increase the burden and expense of maintaining
the same.

The amended bill of complaint has not been answered, but the de-
fendant has made opposition to the granting of an injunction by affi-
davits, and has filed a special demurrer to the tenth paragraph, alleg-
ing indefiniteness and insufficiency of the averments contained in said
paragraph, and also that the whole of said paragraph is irrelevant and
immaterial.  The tenth paragraph of the amended bill of complaint
is the part wherein the complainant disputes the right of the defendant
to engage in the gas business, and charges that by so doing its trans-
actions are ultra vires, and that by using the streets of the city of
Seattle, and making excavations therein for the purpose of laying and
extending and repairing gas pipes, and by disturbing the earth under-
neath the complainant's pipes, the defendant is guilty of maintaining
a nuisance, causing special injury and damage to the complainant.

In his oral argument upon the hearing of the application for an in-
junction pendente lite, and upon the demurrer, one of the solicitors
for the defendant made a counter attack, questioning the right of the
complainant to hold or enjoy the franchise and special privileges
granted by the city of Seattle.  But the questions thus argued should
have been raised by a demurrer or plea in order to merit attention.
Good practice requires that all issues, of law or fact, should be clearly
presented in conformity to the rules of pleading.  Therefore the court
will not consider any attack made upon the plaintiff's case by mere
oral speech.

Upon the argument one party insisted and the other conceded that,
although the state of New Jersey has a statute providing especially
for the formation of corporations to manufacture and sell gas, yet
this defendant was organized under the general incorporation laws of

New Jersey, so that it is not subject to the restrictions and limitations of the gas act, and derives none of its claimed powers therefrom. Therefore the question raised by the demurrer is whether a corporation formed under the general statutes of New Jersey is authorized by the law of its creation to manufacture and sell illuminating gas and acquire the right to use the public streets of a city outside of New Jersey for the purposes essential to that business. This being a question of New Jersey law, the highest court of the state of New Jersey is the highest authority to which the question can be referred. That court has rendered a definite and unequivocal decision, holding that the gas act is the only law under which corporations may be organized in New Jersey for the purpose of carrying on a gas manufacturing business; therefore no argument to the contrary can rightfully prevail in any other court. The following quotation from the opinion of the Supreme Court of New Jersey in the case of Richards v. City of Dover, 61 N. J. Law, 400, 39 Atl. 705, must be accepted by this court as an authoritative declaration of the law of the defendant's domicil, by which its powers are restricted and limited:

"The passage of these general laws authorizing the incorporation of gas companies shows a clear legislative intent to separate gas companies from those corporations which may lawfully be organized and promoted under the general corporation act, and to subject the former to limitations and restrictions not applicable to the latter. Reference to some of the provisions of the gas act of 1876 disclosed such intention too clearly to permit it to be disregarded. Sections 19, 20, 21, and 27 [Gen. St. pp. 1611, 1612], containing stringent provisions for the protection of the public, are made expressly to apply only to corporations formed under said act. These provisions cannot be rendered nugatory by the simple device of incorporating under the general corporation act. The defendant company was organized under the general corporation act, and therefore, not being subject to any of these safeguards, the only construction of this legislation which can reasonably be accepted is that the right to exercise the privilege of laying gas pipes and conducting gas business is not within the scope of its charter rights, and cannot be conferred upon it by municipal authority. The general powers over streets and the lighting of streets granted to the common council by the charter of Dover must be exercised in subordination to the public laws of the state, and cannot be invoked to justify the evasion of the regulations so carefully provided by the gas act. * * * In my judgment, the Legislature has clearly expressed its intention that no corporation shall acquire or exercise the franchises of a gas company without subjecting itself to the salutary provisions of the gas act by incorporating under it."

The only way in which the defendant has attempted to avoid the effect of the above decision is by arguing that the decision only states the law applicable to corporations operating within the state of New Jersey. This contention assumes that the general laws of New Jersey confer ample powers upon corporations organized thereunder to manufacture, distribute, and sell gas wherever licenses to do so can be obtained, and that all restrictions upon the exercise of said powers imposed by the laws of New Jersey are of a local character, applicable only within the state of New Jersey. The Supreme Court of New Jersey, however, in the Dover Case, did not rest its decision upon any special prohibitory statute, but took a comprehensive view of the entire body of the New Jersey statutes bearing upon the subject, and reached the conclusion "that the right to exercise the privilege of lay-

ing gas pipes and conducting a gas business is not within the scope of the charter rights" of a corporation organized like the defendant in this case under the general laws of New Jersey, "and that such right cannot be conferred upon it by municipal authority." By the law of New Jersey as it has been construed by the Supreme Court of that state, a New Jersey corporation, not incorporated under the gas act, has no right to become a supplier of gas, and has no capacity to acquire such right by a grant of privileges from a municipal corporation; and this is not because of any local prohibitory statute, but because such a corporation is not endowed by its creator with any authority whatever to engage in that particular business.

The statutes of New Jersey to which my attention has been directed do not in any manner evince an intention to discriminate against corporations whose operations are confined within the boundaries of New Jersey, nor to confer upon corporations operating elsewhere enlarged powers, or any rights whatever which they are not permitted to exercise and enjoy within that state. It has become a habit of business men in this country to organize corporations in one state to operate in another, and presumably there is some advantage to be gained thereby, otherwise the practice would not be continued. But no sound reason has been advanced, and none occurs to my mind, for giving additional encouragement to the practice by judicially expanding the powers of such corporations so as to include additional rights and powers, to be exercised abroad, but not at home. Corporations organized under legislative statutes are not endowed with the rights of natural persons to do as they please except when restrained by prohibitive laws. On the contrary, the rule is that they have only such powers and rights as the statutes confer, and the enumeration of their powers implies the exclusion of all others, except such subordinate and incidental rights and powers as are essential to their existence, and to the enjoyment and exercise of the rights and powers conferred, in express terms, and a corporation can make no contracts and do no acts, either within or without the state which creates it, except such as are authorized by its charter. This is a proposition of elementary law so often repeated and reiterated in the decisions of the highest court of this country that it is a matter of surprise to find that a large amount of capital has been invested by able men in the belief that the lawful powers of a corporation would expand by the mere extension of its operations into fields beyond the territorial boundaries of the state government to which its allegiance is due. More than 60 years ago Chief Justice Taney, in the opinion of the Supreme Court in Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274, after quoting from the opinions of Chief Justice Marshall in the case of Head & Amory v. Providence Insurance Company, 2 Cranch, 127, 2 L. Ed. 229, and in the Dartmouth College Case, 4 Wheat. 636, 4 L. Ed. 629, and from the opinion of Justice Story in the case of Bank of the United States v. Dandridge, 12 Wheat. 64, 6 L. Ed. 552, said:

"It cannot be necessary to add to these authorities. And it may be safely assumed that a corporation can make no contracts and do no acts, either within or without the state which creates it, except such as are authorized by its charter; and those acts must also be done by such officers or agents, and in such manner, as the charter authorizes."

In the celebrated Dartmouth College Case, Chief Justice Marshall said:

"A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being a mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence."

A number of later declarations of the Supreme Court, equally emphatic, have been cited in the able arguments of counsel for complainant, special reference being made to the following: Thomas v. Railroad Company, 101 U. S. 71, 25 L. Ed. 950; Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337; Railroad Co. v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363, 27 L. Ed. 1020; Oregon Railroad Company v. Oregonian Railway Co., 130 U. S. 1, 9 Sup. Ct. 409, 32 L. Ed. 837; Transportation Company v. Pullman's Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; California Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198.

The decisions of the Supreme Court cited and relied upon by counsel for the defendant all hold, in effect, that it is competent for the Legislature of any state to not only authorize foreign corporations (which term includes corporations of other states) to transact business within their respective boundaries, but also by express provisions of law to adopt any foreign corporation, and by so doing confer upon it powers, rights, and privileges in addition to those conferred originally; but in all of these cases the court has been careful to keep in view the elementary principles laid down in the decisions penned by Marshall, Story, Taney, Miller, Waite, Gray, and White in the cases above referred to, and to ·discriminate between corporations deriving powers from the laws of one state only and others having a legal existence and double entity by force of the creative statutes of more than one state.

The case of Christian Union v. Yount, 101 U. S. 352, 25 L. Ed. 888, was a suit brought to set aside a conveyance of land in the state of Illinois to the Christian Union, a corporation created under the laws of New York, by which said corporation "was made capable of taking, receiving, purchasing, and holding real estate for the purposes of its incorporation, but for no other purpose, to an amount not exceeding the sum of $50,000.00 in value. * * *" The opinion of the court, rendered by Mr. Justice Harlan, shows that no question was made as to the right of the corporation, consistently with its charter and the laws of New York, to acquire real estate not exceeding the quantity designated in its charter. The Supreme Court did not decide in that case that a corporation abroad has greater capacity to transact business or acquire property than it would have if its operations were confined within the state of its origin. On the contrary, Mr. Justice Harlan took pains to say that the conveyance which was moved against in that case could be sustained without antagonizing the proposition laid down in a decision of the Supreme Court of Illinois in the case of Starkweather v. American Bible Society, 72 Ill. 50, 22 Am. Rep. 133, "that a foreign corporation, forbidden by the laws of the state creating it to acquire lands there by devise, could not, by that mode, take lands

in Illinois, in the absence of a statute of that state assenting thereto."

The case of St. Louis Railroad v. Terre Haute Railroad, 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748, involved the validity of a contract by which one railroad company leased its road to another corporation. The parties were incorporated, respectively, under the laws of Illinois and Indiana. The court, regarding the plaintiff as a party to an unlawful contract, denied its right to invoke the assistance of a court of equity to set it aside, but the opinion contains vigorous expressions to the effect that "a contract beyond the corporate powers of either party is as invalid as if beyond the corporate powers of both," and that a statute of one state authorizing such a contract confers no power on a railroad corporation of another state to take such a lease if not authorized to do so by the laws of its own state.

In the case of Louisville Railway Company v. Louisville Trust Company, 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081, the controverted question was as to whether certain "bonds which the Louisville Trust Company and the Louisville Banking Company, respectively, purchased in good faith, and without notice of the want of the assent of a majority of the stockholders, were valid in the hands of these companies," so as to fix a liability upon a railway company under a contract of guaranty, executed without some of the formalities prescribed by the laws of the state under which the railroad company was organized, and the decision of the court was to the effect that "the guaranty by the Louisville, New Albany & Chicago Railway Company of the bonds of the Beattyville Company was not ultra vires, in the sense of being outside the corporate powers of the former company"; for the execution of such a guaranty was authorized by a statute, and, although the statute made it a prerequisite to the action of the board of directors that it should be upon the petition of a majority of the stockholders, this was only a regulation of the mode and the agencies by which the corporation should exercise the power granted to it, and the court placed its decision upon a recognized distinction "between the doing by a corporation of an act beyond the scope of the powers granted to it by law on the one side, and an irregularity in the exercise of the granted powers on the other." The case appears to have been cited in support of the proposition that a state may adopt a foreign corporation so as to make it a domestic corporation of the state in which it transacts business, and extend its powers into such state. That part of the opinion of the court which relates to this point reads as follows:

"This court has often recognized that a corporation of one state may be made a corporation of another state by the Legislature of that state in regard to property and acts within its territorial jurisdiction. Ohio & Mississippi Railroad Company v. Wheeler, 1 Black, 286, 297 [17 L. Ed. 130]; Railroad Co. v. Harris, 12 Wall. 65, 82 [20 L. Ed. 354]; Railway Company v. Whitton, 13 Wall. 270, 283 [20 L. Ed. 571]; Railroad Co. v. Vance, 96 U. S. 450, 457 [24 L. Ed. 752]; Memphis & Charleston Railroad v. Alabama, 107 U. S. 581 [2 Sup. Ct. 432, 27 L. Ed. 518]; Clark v. Barnard, 108 U. S. 436, 451, 452 [2 Sup. Ct. 878, 27 L. Ed. 780]; Stone v. Farmers' Loan & Trust Co., 116 U. S. 307, 334 [6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636]; Graham v. Boston, Hart-

123 F.—38

ford & Erie Railroad, 118 U. S. 161, 169 [6 Sup. Ct. 1009, 30 L. Ed. 196]; Martin v. Baltimore & Ohio Railroad, 151 U. S. 673, 677 [14 Sup. Ct. 533, 38 L. Ed. 311]. But this court has repeatedly said that in order to make a corporation, already in existence under the laws of one state, a corporation of another state, 'the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the state, or by the Legislature, and such allegiance as a state corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this.'  Pennsylvania Railroad v. St. Louis, Alton & Terre Haute Railroad, 118 U. S. 290, 296 [6 Sup. Ct. 1094, 30 L. Ed. 83]; Goodlett v. Louisville & Nashville Railroad, 122 U. S. 391, 405, 408 [7 Sup. Ct. 1254, 30 L. Ed. 1230]; St. Louis & San Francisco Railway v. James, 161 U. S. 545, 561 [16 Sup. Ct. 621, 40 L. Ed. 802]."

This statement of the law is certainly very clear, and is an emphatic denial of any claim which the defendant corporation can possibly make to authority to engage in the gas business by virtue of the laws of this state as a domestic corporation of this state, inasmuch as the Legislature of this state has not by express enactment adopted the defendant as a domestic corporation, nor conferred any power upon it in addition to the powers conferred by the laws of New Jersey.

In the case of Railroad Co. v. Vance, 96 U. S. 450, 24 L. Ed. 752, an Indiana corporation obtained possession of a railroad in Illinois under a lease, and afterwards the Legislature of Illinois enacted a validating statute confirming the lease, and providing, among other things, as follows:

"The said lessees, their associates, successors, and assigns, shall be a railroad corporation in this state, under the said style of 'The Indianapolis & St. Louis Railroad Co.,' and shall possess the same or as large powers as are possessed by said lessor corporation, and such other powers as are usual to railroad corporations."

The question in the case was as to the validity of assessments for the purpose of taxation in Illinois, including the taxable value of the capital stock and the franchise of the lessor corporation; there being an evident intention that warrants based upon such assessments should be levied upon such of the leased property as by the laws of Illinois might be seized for the payment of taxes against corporations created under the laws of that state. It was contended that the lessee was a corporation created by the laws of Indiana, and that the act of the Illinois Legislature did not make it a corporation of Illinois, and that the leased property could not be seized to pay taxes assessed upon the capital stock of the lessor company. In the opinion of the Supreme Court by Mr. Justice Harlan it was said:

"That act [referring to the Illinois statute confirming the lease] was something more than a mere license to an Indiana corporation to exert its corporate powers and enjoy its corporate rights and privileges in another state. Such would undoubtedly have been the case had the act closed with the first section, as it would have done had the General Assembly intended nothing more than to confer upon the corporation of another state authority to extend its operations by carrying on railroad business in Illinois. We cannot thus restrict the effect of the act without disregarding the ordinary meaning of the plain words of its second section, which declares that the lessees, their associates, successors, and assigns, shall be a railroad corporation in the state of Illinois. * * * After the passage of the act of March 11, 1869 (3 Laws

1869, p. 316), the property described in the lease of 1867 became, at least for the purposes of taxation in Illinois, that of the corporation created by that act as a railroad corporation in that state.  But it may be suggested that the utmost which can be claimed for the act is that, without creating a new corporation in Illinois, it only made the complainant, as an Indiana corporation, a corporation of the state of Illinois.  It was clearly competent for the General Assembly to have done this, as held in Railroad Company v. Harris, 12 Wall. 65 [20 L. Ed. 354], where the court said: 'Nor do we see any reason why one state may not make a corporation of another state, as there organized and conducted, a corporation of its own, quo ad any property within its territorial jurisdiction.'  But we do not see how this view gives any support to the position of the complainant.  For had the act, after confirming the lease of 1867, declared in terms that the lessee corporation, as organized and conducted in Indiana, should be deemed a corporation of Illinois, we should have felt bound to hold that, as to the property obtained by and operated under the lease within that state, it was, in the sense of the Illinois revenue statute of 1872 (Laws 1871–72, p. 1), a corporation 'created under the laws' of that state, subject to taxation upon its capital stock, including its franchise, so far as such stock and franchise were fairly represented by the leased property. * * * Clearly, the county collectors have no right to levy the warrants in their hands upon any property which belongs to the Indiana corporation, as distinguished from the Illinois corporation of the same name. But they have the right, for the reasons heretofore given, to subject to the payment of the taxes in question the property which the corporation created by the act of 1869 is operating and managing in that state, as lessee of the St. Louis, Alton & Terre Haute Railroad Company."

This decision certainly falls far short of being an authority or precedent supporting the idea that comity declared by the general laws of a state permitting corporations of sister states to extend their operations within its boundaries can have the effect to augment the charter powers of such corporations.

These decisions settle the law for this court, and I deem it unnecessary to comment upon the other authorities cited by the defendant's counsel; for, no matter how strongly they may fortify the defendant's position, they cannot prevail against the rule maintained by the Supreme Court of the United States.

There is a general rule, and it is a good one, which does not permit a private litigant to question the right of a corporation to carry on its business within a state under a license from, or by permission of, the state government; and, so long as the lawfully constituted authorities of the state do not see fit to proceed against an offending corporation, the courts will presume that it has, at least, an implied license.  Like all general rules, however, this one has its exceptions, founded in reason; and where a private suitor complains of unlawful transactions creating a public nuisance, and causing special and irreparable injury to him, the courts have no right to refuse relief. The question as to the right of a corporation to use a public street under an invalid franchise was considered and passed upon by the Circuit Court of Appeals for the Seventh Circuit in the case of General Electric Railway Company v. The Chicago, Indianapolis & Louisville Railway Company, 98 Fed. 907, 39 C. C. A. 345, 58 L. R. A. 231, in which case an injunction granted by the United States Circuit Court for the Northern Division of the Northern District of Illinois was sustained, and the court held that an injunction to prevent the construction of a street railway under an in-

valid ordinance may be granted in favor of a railroad company, when the operation of the street railway will interfere with access to the railroad freight house and track yard, thereby causing direct, immediate, and special injury, for which the railroad company has no adequate remedy at law. The case was fully argued, and a multitude of authorities were cited. From the synopsis of the arguments contained in the report of the case as well as the opinion of the court, it appears that the point was distinctly urged that, if a railway company is proceeding to construct its road in the public streets of a city without a valid ordinance, that fact will not authorize equitable relief by injunction, the public authorities being in such cases the only proper complaining parties. But the court distinguished the case from those cases in which that doctrine was affirmed by the fact that the bill of complaint alleged that the construction and operation of a street railway would cause special injury to the complainant, and the court held that the doctrine contended for by the defendant "has no application when the ground of the action is irreparable injury, and the averment of an invalid ordinance is made."

Another important case sustaining the right of a party complaining of a special injury to raise the question of ultra vires is Hudson River Tel. Co. v. Waterveliet Co. (N. Y.) 32 N. E. 148, 17 L. R. A. 674, 31 Am. St. Rep. 838. The brief of counsel for the complainant contains citations to other authorities sustaining the exception to the general rule, as follows: Wilmington City Railway v. Wilmington, etc., Railway (Del. Ch.) 46 Atl. 12; Homestead Street Railway v. Pittsburgh Railway Co., 166 Pa. 162, 30 Atl. 950, 27 L. R. A. 383; Raritan Co. v. Delaware Co., 18 N. J. Eq. 546; Indianapolis Cable Company v. Citizens' St. Ry. Co., 127 Ind. 369, 24 N. E. 1054, 26 N. E. 893, 8 L. R. A. 539; City of Zanesville v. Zanesville Co. (Ohio) 23 N. E. 59; Rector v. Hartford Deposit Company (Ill.) 60 N. E. 530; Denver & S. R. Co. v. Denver City, 2 Colo. 673; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Covington Gaslight Company v. City of Covington et al. (Ky.) 58 S. W. 805.

It is my opinion that the complainant's contention that Ordinances Nos. 39 and 234 should be construed as granting a perpetual exclusive right to prohibit the laying of other pipes in the streets of Seattle within a distance of $2\frac{1}{2}$ feet from the center of its gas pipes cannot be sustained. The clause referred to is ambiguous in its terms and uncertain as to its meaning; but, even if it were intended to be a grant of a perpetual right, it is my opinion that the city government could not constitutionally surrender its police power to the extent claimed by the complainant. By its charter the city has control of its streets for the benefit of the public, and whenever necessity or the public welfare demands it the complainant must submit to the inconvenience and additional burden of maintaining its system, which may result from the laying of other pipes, pursuant to lawful authority, within the five-foot zone which it now claims.

The averments of the amended bill of complaint and the showing made by the affidavits convince me that the laying of the defendant's gas pipes in the streets of the city, parallel to the complainant's gas pipes, adds heavily to the expense and care necessarily incidental

to the maintenance of the complainant's system, and increases the danger naturally and necessarily incidental to the distribution of gas by means of pipes laid in the streets, and, as the right to engage in the business of manufacturing and selling gas has not been conferred upon the defendant by its charter, it is a trespasser, and for the injuries complained of the complainant does not have an adequate remedy except in a court of equity.

The evidence contained in the affidavits filed in behalf of the defendant is not sufficient to prove that the complainant consented to the laying of the defendant's pipes in the streets so as to be estopped from defending its rights; therefore a prohibitive injunction should be granted to restrain the defendant from going any further in the extension of its system by laying pipes parallel to or crossing the pipes of the complainant.    But it is my opinion that the court cannot properly grant a mandatory injunction to interfere with the defendant's works now in existence until the defendant has, upon the final hearing, been given an opportunity to make a full defense.

Let an interlocutory decree be entered granting a prohibitive injunction, as indicated.