Bigger, J.
This is an action brought by the attorney-general, in the name of the state, to recover franchise taxes alleged to be due from the defendant under the provisions of the Willis law, for the years 1903, 1904, 1905 and 1906. The petition states that the defendant company was incorporated under a special act of the Legislature of Ohio, passed March 9, 1849, entitled, “An act to confirm the charter of the Covington & Cincinnati Bridge Company, incorporated by an act of the General Assembly of Kentucky, passed February 17th, 1846, with certain limitations.”
After reciting the provisions of the Kentucky charter of the defendant company, the act of the Ohio Legislature contains the following provision and grant: “Now, therefore, be it enacted by the General Assembly of the state of Ohio that the Covington & Cincinnati Bridge Company, thereby created, shall be, and the same is hereby made, a body corporate and,, politic of this state, with the same franchises, rights and privileges and subject to the same duties and liabilities as are specified in the above recited act, in manner and form as though said act were fully and at large set forth, section for section, word for word, except,” etc., then follow provisions imposing certain limitations and restrictions upon the powers granted by the Kentucky charter and provisions additional to those contained therein, and, amongst others, the following:
“One-half the capital stock of the company, actually paid in, shall, as soon as the company commences taking tolls, be placed upon the duplicate of the treasurer of Hamilton county for taxation for all purposes.”
The petition then recites that, after the adoption of the Constitution of 1851, the defendant corporation accepted the provisions thereof and subjected itself to taxation under the general tax laws of the state of Ohio. The state then, in four separate causes of action, claims that the defendant is indebted to the state, under the Willis law, for each of the four years the sum of $1,063.70, or a total of $4,254.80; but it is stated *57 that the defendant, under the belief that it was a foreign corporation, paid each year a sum, which sums, together, aggregated $1,654.93, and for which the defendant is entitled to a credit. The state, therefore, asks judgment for the balance, $2,599.87.
The answer admits the legislation of both Kentucky and Ohio stated in the petition with reference to the defendant’s charter and that the grants and franchises therein contained were duly accepted by the defendant in 1849, and that it has maintained its corporate organization ever since said date in accordance with the provisions of said statutes. It is stated that the original capital stock of $300,000 was increased by acts of the General Assembly of Kentucky and Ohio to $1,250,000, par value, at which it still remains. It is averred that, by resolution of the defendant’s board of directors prior to the year 1900, the defendant did surrender all claims to taxation of the property of the defendant company in any other manner than under the general taxation laws of the state. It admits that it had outstanding capital stock during each of the years in question amounting to $1,063,700, as alleged in petition. These averments and others, which I do not recite at length, are made a part of each of the three separate defenses stated in the answer.
In the first defense it is stated that, in the year 1902, after the passage of the Willis law, a controversy arose between the secretary of state of Ohio and the defendant 'company as to whether the defendant should be required to pay taxes under the requirements of said law as a domestic or foreign corporation. And, upon reference and appeal of the question under the provisions of the said AYillis law, to the Auditor of State, Treasurer of State and Attorney-General, the said board’decided that the defendant, for the purposes of taxation under the said law, should be regarded as a foreign corporation and that, in view of the fact that forty per cent, of its property is located in Ohio, it should pay one-tenth of one per cent, on forty per cent, of its authorized capital stock, in accordance with the provisions of said act. It is then recited that, ever since said decision, the defendant *58 company has made the reports prescribed by said act to the Secretary of State and that, from these reports, the Secretary of State determined that, in the year 1903, it should be taxed under said act upon 30% per cent, of its capital stock, and in each of the other three years in question, upon 33.89 per cent, of its capital stock, and that in each year the defendant did pay the said fees and taxes thus found to be due from it to the state and for which the Secretary of State gave receipts. It is stated that, ever since said decision of the said state officers, the taxing officers of the state have treated the defendant as a foreign corporation for the purposes of taxation under this law, and that said sums, so paid by the defendant, were received by the Secretary of State in discharge of all claims made or existing against the defendant by virtue of said Willis law.
In its second defense, the defendant states that it pays taxes under the laws of Kentucky upon all of its tangible property, both real and personal, situated in that state, and, also, franchise taxes to the city of Covington, Kentucky, and to the state of Kentucky, and that these franchise taxes, so imposed under the laws of the state of Kentucky, are levied upon all the franchises held and enjoyed by the defendant within that state, and the manner in which the value of such franchises is determined is set out. And it is averred that the imposition or exaction of any portion of the fee or tax sought to be recovered in this action would, in substance and effect, be a direct tax upon the property and franchises of the defendant corporation, which are located, held and enjoyed exclusively within the state of Kentucky and under and by virtue of the laws of that state.
It is then stated that the defendant duly paid, at the proper times, all the taxes levied in Ohio against its tangible property, both real and personal, situated in this state, during each of the years in question, and, in addition thereto, the franchise tax levied and assessed against it as hereinbefore stated, and that any exaction or recovery of the fee or tax sought to be collected in this action would be in violation of Sections 2 and 19 of Article I of the Ohio Constitution, and that such exaction would *59 also deprive the defendant of its property without due process of law and deny to it the equal protection of the laws, in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States.
The third defense states that, by an act of Congress, passed February 17, 1865, the bridge of the defendant company was declared to be a post road for the conveyance of the United States mails; that the only traffic conducted upon or over said bridge is through travel between the states of Kentucky and Ohio, and that the tolls collected thereon are for interstate traffic only, and that, therefore, the exaction of this fee or tax would be in violation of the Commerce Clause of Section 8, Article I of the Federal Constitution.
The ease is submitted upon general demurrer to the answer. The questions here at issue are somewhat novel and appear not to have been heretofore presented or decided in any reported case.
The defendant corporation is one created by concurrent legislation of the states of Kentucky and Ohio. This legislation was passed prior to the adoption of the Constitution of Ohio of 1851 and when, under the Constitutions of both states, corporations might be created by.special act of the Legislature. The act of the Ohio Legislature, passed March 9, 1849, expressly confers corporate powers upon the defendant corporation. The language is, ‘ ‘ The Covington & • Cincinnati Bridge Company shall be, and the same is hereby made, a body corporate and politic of this state, with the same franchises, rights and privileges and subject to the same duties and liabilities as are specified in the above recited act” — the act of the Kentucky Legislature of 1846 — “in manner and form as though the said act were fully and at large set forth, section'by section, word for word. ’ ’
It is well settled that a corporation already created by the laws of one state may be re-incorporated by act of another state, and thus become a domestic corporation. Bridge Co. v. Mayer, 31 O. S., 317; L. & A. C. Ry. v. Louisville Trust Co., 174 U. S., 552; Indiana & S. L. R. R. v. Bance, 96 U. S., 450; McGregor v. Erie Railway Co., 35 N. J. Law, 115.
*60 By virtue of the charter granted to this defendant corporation by the act of 1849, all the rights and franchises of a corporation were conferred upon the defendant as fully and completely as though it had been called into existence originally by that act. Its status in this state, by virtue of its charter, is in no respect inferior to that of any other domestic corporation. “Foreign corporations can exercise none of their franchises or powers within this state, except by comity or legislative consent, and that consent may be upon such terms and conditions as the General Assembly, under its legislative power, may impose. ’ ’ 28 O. S., 521.
But this corporation exercises its franchises in Ohio, not by comity or mere legislative consent to a foreign corporation to do business in Ohio, but by virtue of its compact with the state, and stands upon an equal footing with all other domestic corporations of the state. It possesses, by virtue of the grant contained in its charter, all the rights and privileges of an Ohio corporation, and is, therefore, subject to all of the liabilities of an Ohio corporation, except in so far as exempted by its charter. The annual fee required to be paid by Ohio corporations under the provisions of the Willis law is not a property tax but a franchise tax. Southern Gum Co. v. Laylin, Secretary, etc., 66 O. S., 578.
That the Legislature has power to impose such a tax, and that the exercise of that power is not expressly limited by the Constitution, is also settled by the decision in that case. The implied limitation is that the tax imposed shall not exceed the reasonable value of the privilege.
Arguments, therefore, drawn from the limitations imposed by the Constitution upon the.power of the Legislature as to the taxation of property, are not in point, as this is not a tax upon the property of the defendant corporation.
That the defendant is an Ohio corporation and that it is to be so considered for purposes of property taxation, is settled by the decisions. Of the Supreme Court in the cases of Sebastian v. Covington & Cincinnati Bridge Company, 21 O. S., 451, *61 and Bridge Company v. Mayer, 31 O. S., 317. By virtue of what provision of law, organic or statutory, is it to be regarded as an Ohio corporation for the purposes of property taxation, but a foreign corporation for purposes of taxation under the Willis law? If the state has a right to tax its property as an Ohio corporation, why has it not the right to tax its franchises, granted to it by act of the Ohio Legislature? It is true that, by its charter, the basis for taxation of its property was fixed at one-half of the capital stock of the defendant company. This, it would seem, was a concession made by the state of Ohio in favor of the defendant corporation, which, while a domestic corporation of two states, was still but a single corporate entity, owning property situated partly-in one state and partly in another., and it is to be observed that Judge West says, in stating the opinion in Sebastian v. The Covington & Cincinnati Bridge Company—
“That, if the defendant’s charter had been silent in regard to taxation, the full amount of its capital stock would have been subject .to the provisions of the general law.”
But the Willis law makes no such concession in favor of any domestic corporation as to the tax upon its franchises. Nor do I see any reason for saying that it was not the legislative intention to impose this tax upon the defendant corporation as well as all other domestic corporations. As Judge Welch says, in Bridge Company v. Mayer, ‘ ‘ The truth is that this is a single corporation, clothed with the powers of two corporations.” This is not a property tax, but a tax upou its franchises and privileges or powers and, while it is but a single entity, yet it is a single corporation with the powers and privileges and immunities of two corporations and possessing such double grant of powers and privileges and immunities, what it there inequitable in its paying the tax in both states for the exercise of this double grant of power? In this respect the defendant corporation is sui generis. Ordinary domestic corporations have the powers of but a siugle corporation, and, if Kentucky corporations seek *62 to do business in the state of Ohio, they may or may not be granted that privilege, or, if granted, submit themselves to whatever restrictions and impositions the law of this state may see fit to impose. But this defendant stands upon a different footing in that regard from a foreign corporation in that it can claim the right to do business in Ohio by virtue of its Ohio charter. I see no valid reason, therefore, for holding that this corporation, for the purposes of taxation under the Willis law, is to be regarded as a foreign corporation, but, on the contrary, it is, by virtue of its Ohio charter, an Ohio corporation and should be held liable for the payment of this tax as an Ohio corporation.
Is the state estopped or concluded by the acts of the state’s officers, set up in the first defense of the answer ? In my opinion it is not. The state admits the defendant is entitled to a credit on the amount due from it in the sum it has already paid and I see no reason to hold that the state is estopped or concluded by the decision of .its officers and agents that this corporation is to be regarded as a foreign corporation under this law. It is a familiar principle that the state is not estopped from the assertion of its legal claims by reason of the mistakes of taxing officers. : ..
Taxing officers and boards are not' courts. Upon this subject Judge Burket says, in Hagerty et al v. Huddleson, Hubbard & Company, 60 O. S., at page 165, “that taxing officers and boards are not courts, and do not exercise judicial powers as courts, and that their actions are not judgments seems so well settled since the case of Musser, Auditor, v. Adair, 55 O. S., 466, that nothing more need be said on that question here.” This board, composed of the Auditor of State, Treasurer of State and the Attorney-General, acts as an agent of the state authorized to fix the valuation of the property of corporations subject to taxation, and consequently the amount of the tax to be paid, and, in the absence of fraud, or that which is tantamount to fraud, such valuation will be conclusive. Upon this subject Judge Burket says, in the case of Hagerty et al v. Hudleson, Hubbard & Company, supra—
*63 “The valuation placed upon the property by a taxing officer or board within the scope of authority conferred by law when made in good faith, will be held and regarded by courts as conclusive of the value unless it should appear that there was some gross mistake to the prejudice of the tax-payer; but when the complaint is not as to the valuation, but goes to the extent of claiming that under the statute the. tax-payer is not liable to be taxed at all under the peculiar circumstances of the case, that is, that the tax is illegal, then the determination of the taxing officers and boards is only prima facie, and, under Section 5848, Revised Statutes, full jurisdiction is conferred upon the courts of common pleas and superior courts to enjoin such tax as illegal.”
To entitle the tax-payer to maintain such action it is not essential that the entire tax levied shall be illegal (Groesbeck v. Cincinnati et al, 51 O. S., 365). While the action of the board is final as to the valuation in the absence of fraud, yet if the tax is levied illegally, that is, upon a principle not warranted by law, then the action of the board may be reviewed in the courts and corrected. Suppose that the board had decided against the contention of the defendant that it was a foreign corporation for purposes of taxation under this law, will it be claimed that the tax-payer could not have tested the legality of the action of the board in the courts under Section 5848, Revised Statutes, in so deciding and in attempting to tax it as a domestic corporation ? Certainly not. The Legislature did not repeal the provisions of Section 5848 when it enacted the Willis law as to tax-payers under -that law, and if the tax-payer may invoke the jurisdiction of the courts to determine the question as to the legality of the action of the board, the state may also do so, as the state’s rights in that regard are certainly not inferior to the rights of the individual tax-payer. The state is not concluded merely because it has already collected some portion of the amount that may be due to it but less than the whole amount due.
In the case of German Mutual Insurance Company v. Gibson, 1 N. P. — New Series, 24, the Superior Court of Cincinnati, at General Term, held that the “submission to property owners *64 of written forms for making their tax returns does not estop the state from compelling the payment of back taxes omitted because of the use of such forms.” The same principle is applicable here.
Wade H. Ellis, Attorney-General, and William R. Medaris, Special Counsel, for plaintiff.
John W. Warrington, for defendant.
Neither do I think the facts stated in the third defense are sufficient to defeat the right of the state to recover these fees. This question has not been argued by counsel in the briefs submitted, but upon the principles announced in the case of Western Union Telegraph Company v. Mayer, 28 O. S., 521, I am of the opinion that this is not in conflict with the Constitution of the United States, Article I, Section 8.
I conclude, therefore, that the facts stated in the answer do not constitute a defense to the petition and the demurrer is sustained.