GOODWIN v. NEW YORK, N. H. & H. R. CO.

(Circuit Court, D. Massachusetts.   July 27, 1903.)

No. 1,290.

1. JURISDICTION OF FEDERAL COURTS—DIVERSITY OF CITIZENSHIP—CITIZENSHIP
   OF CORPORATION INCORPORATED IN DIFFERENT STATES.

   A corporation, owning and maintaining a system of railroad in Mas-
   sachusetts and Connecticut, and so incorporated in both states that the
   Circuit Court in Massachusetts has jurisdiction of a suit there brought
   against it by a citizen of Connecticut, and, conversely, the Circuit Court
   in Connecticut has jurisdiction of a suit there brought against it by a
   citizen of Massachusetts, cannot be sued in the Circuit Court in Massa-
   chusetts by a citizen of Massachusetts, who alleges that the defendant
   is a citizen of Connecticut.

At Law.   On plea to jurisdiction.

S. A. Fuller, for plaintiff.

Charles F. Choate, for defendant.

LOWELL, District Judge.   This is an action of tort brought by
a citizen of Massachusetts against "the New York, New Haven &
Hartford Railroad Company, a corporation duly established by the
laws of the state of Connecticut," to recover for injuries sustained
in Massachusetts.   The officer's return to the writ states that it was
served "by delivering in hand to Fayette S. Curtis, fourth vice presi-
dent thereof, at his office in said Boston, the original summons of
this writ."   The defendant has pleaded to the jurisdiction, and the
issue raised by the plea has been tried upon agreed facts.   The court
has to determine if there is diversity of citizenship between the plaintiff
and the defendant.   The matter has been so much discussed in opin-
ions rendered by the Supreme Court and by other federal courts,
and the dicta, if not the decisions, are so contradictory, that a some-
what extended examination of the question must be made.

In the United States a single railroad system often extends into
several states.   The system is most conveniently operated by one
organization, and the courts have had to determine what is the rela-
tion of this organization to the several states in which its lines are
situated.   In Martin v. B. & O. R. R., 151 U. S. 673, 677, 14 Sup.
Ct. 533, 38 L. Ed. 311, it was said:

"A railroad corporation, created by the laws of one state, may carry on
business in another, either by virtue of being created a corporation by the laws
of the latter state also, as in Railroad Co. v. Vance, 96 U. S. 450 [24 L. Ed.
752]; Memphis & Charleston Railroad Co. v. Alabama, 107 U. S. 581 [2 Sup.
Ct. 432, 27 L. Ed. 518]; Clark v. Barnard, 108 U. S. 436 [2 Sup. Ct. 878, 27
L. Ed. 780]; Stone v. Farmers' Co., 116 U. S. 307; and Graham v. Boston,
Hartford & Erie Railroad, 118 U. S. 161 [6 Sup. Ct. 1009, 30 L. Ed. 196]; or
by virtue of a license, permission or authority granted by the laws of the latter
state to act in that state under its charter from the former state.   Railroad
Co. v. Harris, 12 Wall. 65 [20 L. Ed. 20]; Railroad Co. v. Koontz, 104 U. S.
5 [26 L. Ed. 643]; Pennsylvania Railroad v. St. Louis, etc., Railroad, 118
U. S. 290 [6 Sup. Ct. 1094, 30 L. Ed. 83]; Goodlett v. Louisville & Nashville

¶ 1. Citizenship of corporation for purposes of federal jurisdiction, see note
to St. Louis, I. M. & S. Ry. Co. v. Newcom, 6 C. C. A. 174.

See Courts, vol. 13, Cent. Dig. § 860.

Railroad, 122 U. S. 391 [7 Sup. Ct. 1254, 30 L. Ed. 1230]; Marye v. Baltimore & Ohio Railroad, 127 U. S. 117 [8 Sup. Ct. 1037, 32 L. Ed. 94]. In the first alternative it cannot remove into the Circuit Court of the United States a suit brought against it in a court of the latter state by a citizen of that state because it is a citizen of the same state with him. Memphis & Charleston Railroad v. Alabama, above cited. In the second alternative it can remove such a suit, because it is a citizen of a different state from the plaintiff. Railroad Co. v. Koontz, above cited."

For purposes of convenience, the two classes of corporations above described will be designated in this opinion as the first and the second, respectively. It is not necessary here to consider by what marks the two classes are distinguished, because the Circuit Court for this district in Smith v. New York, New Haven & Hartford Railroad (C. C.) 96 Fed. 504, has decided that the railroad here in question is of the first class.

The classification just mentioned has been modified in one particular by later cases. A corporation of the second class, created by the laws of one state, may have become a corporation of another state into which its lines extend; but its incorporation in the latter state, though rendering it subject for many purposes to the laws of that state, is not deemed to affect its jurisdictional status. Thus in St. Louis & San Fran. Railway Co. v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802, the plaintiff in error was a railroad corporation created in Missouri, and therefore a citizen thereof. It owned and operated lines of railroad in Arkansas, and by virtue of the general statutes of Arkansas had "become a railroad corporation of (Arkansas), subject to all the laws of the state now in force or hereafter enacted, the same as if formally incorporated in this state, anything in its articles of incorporation or charter to the contrary notwithstanding, and such acts on the part of such corporation shall be conclusive evidence of the intent of such corporation to create and become a domestic corporation." Yet it was held not to be a citizen of Arkansas, so as to permit suit in the Circuit Court in that state brought against it by a citizen of Missouri. Incorporation for some purposes in Arkansas was not deemed to affect the defendant's sole jurisdictional citizenship in Missouri. Again, in Louisville Railway Co. v. Louisville Trust Co., 174 U. S. 552, 563, 19 Sup. Ct. 817, 43 L. Ed. 1081, a corporation of Indiana sued as such, in the Circuit Court in Kentucky, a citizen of Kentucky. The defendant pleaded to the jurisdiction. The court said:

"But a decision of the question whether the plaintiff was or was not a corporation of Kentucky does not appear to this court to be required for the disposition of this case, either as to the jurisdiction or as to the merits. As to jurisdiction, it being clear that the plaintiff was first created a corporation of the state of Indiana, even if it was afterwards created a corporation of the state of Kentucky also, it was and remained, for the purposes of the jurisdiction of the courts of the United States, a citizen of Indiana, the state by which it was originally created. It could neither have brought suit as a corporation of both states against a corporation or other citizen of either state, nor could it have sued or been sued as a corporation of Kentucky, in any court of the United States."

In other words, the Supreme Court has held that an organization may for some purposes be incorporated in a given state, and yet may

not be a corporation of that state for purposes of jurisdiction. A corporation of the second class, though in some respects treated as a corporation of several states, yet remains for jurisdictional purposes a citizen of the state which originally created it, and of that state alone. Plainly, the railroads in the two cases last mentioned were of the second class, and the language just quoted is in accord with that used in R. R. v. Harris, 12 Wall. 65, 82, 20 L. Ed. 354, 358:

"Nor do we see any reason why one state may not make a corporation of another state, as there organized and conducted, a corporation of its own, quo ad hoc any property within its territorial jurisdiction."

It cannot be supposed that the language of the court in these cases was intended to deny the existence of corporations of the first class, although, in the latest case, the Supreme Court was disposed to treat interstate railroads as corporations of the second class, where the classification was open to doubt. Southern R. R. v. Allison, 23 Sup. Ct. 713, 47 L. Ed. ——.

In Memphis R. R. Co. v. Ala., 107 U. S. 581, 2 Sup. Ct. 432, 27 L. Ed. 518, the Supreme Court held that the railroad, a corporation of the first class—that is to say, a corporation for jurisdictional purposes both of Alabama and Tennessee—could not remove into the Circuit Court in Alabama a suit brought against it by a citizen of that state. In that case it was said:

"The defendant, being a corporation of the state of Alabama, has no existence in this state as a legal entity or person, except under and by force of its incorporation by this state; and, although also incorporated in the state of Tennessee, must, as to all its doings within the state of Alabama, be considered a citizen of Alabama, which cannot sue or be sued by another citizen of Alabama in the courts of the United States." 107 U. S. 585, 2 Sup. Ct. 436, 27 L. Ed. 518.

The decision was rested on Railway Co. v. Whitton, 13 Wall. 270, 20 L. Ed. 571, and follows Muller v. Dows, 94 U. S. 444, 24 L. Ed. 207, in both of which cases the corporation must be taken to have been of the first class. In the former case it was said:

"The defendant is a corporation, and as such a citizen of Wisconsin by the laws of that state. It is not there a corporation or a citizen of any other state. Being there sued, it can only be brought into court as a citizen of that state, whatever its status or citizenship may be elsewhere." 13 Wall. 283, 20 L. Ed. 576.

If, then, a plaintiff, citizen of one state, can maintain in the federal courts in another state a suit against a corporation of the first class, created in both states (Muller v. Dows, Railway Co. v. Whitton), and if that corporation cannot remove into the federal court in either state a suit brought against it by a citizen of that state (Memphis R. R. v. Ala.), it would seem to follow that this court is without jurisdiction in the case now before it. This is certainly true if an interstate railroad of the first class is to be treated in both states and under all circumstances as one and the same corporation.

But the plaintiff urges that in the case of what has been called a corporation of the first class, such as this defendant, there are in the eye of the law two separate corporations, one having jurisdictional citizenship in Massachusetts, and one in Connecticut, and that he has

chosen to sue the latter. In some of the cases cited there is language which strongly states the separate existence of two corporations. See R. R. v. Vance, 96 U. S. 450, 24 L. Ed. 752; Clark v. Barnard, 108 U. S. 436, 452, 2 Sup. Ct. 878, 27 L. Ed. 780; Graham v. B. H. & E. R. R., 118 U. S. 161, 169, 6 Sup. Ct. 1009, 30 L. Ed. 196.

In order to sustain its plea to the jurisdiction, the defendant may not be obliged to prove that a corporation of the first class is to be deemed jurisdictionally a single corporation having two aspects, in Massachusetts a citizen of Massachusetts, and in Connecticut a citizen of Connecticut. It will also prevail if it can prove that such an organization is to be deemed two separate corporations indissolubly connected, owners in common of the corporate property, each of which, in the state where created, is recognized as the owner of the property situated in both states, and in the other state is wholly ignored. Thus in Ohio R. R. v. Wheeler, 1 Black, 286, 297, 17 L. Ed. 130, the court said:

"It is true that a corporation by the name and style of the plaintiffs appears to have been chartered by the states of Indiana and Ohio, clothed with the same capacities and powers, and intended to accomplish the same objects, and it is spoken of in the laws of the states as one corporate body, exercising the same powers and fulfilling the same duties in both states. Yet it has no legal existence in either state, except by the law of the state. And neither state could confer on it a corporate existence in the other, nor add to or diminish the powers to be there exercised. It may, indeed, be composed of and represent, under the corporate name, the same natural persons. But the legal entity or person which exists by force of law can have no existence beyond the limits of the state or sovereignty which brings it into life and endues it with its faculties and powers."

It is not true without qualification that a corporation created by one state has no existence outside that state. Corporations created outside Massachusetts sue and are sued in the state and federal courts of Massachusetts every day, and their existence is thus recognized. In the case of corporations like this defendant, however, it may be that the Massachusetts creation alone is recognized in Massachusetts, and the Connecticut creation alone in Connecticut. See the language already quoted from Ohio R. R. v. Wheeler and Railroad Co. v. Whitton. Whether the New York, New Haven & Hartford Railroad be considered one corporation with two aspects, or two separate corporations, a decision in favor of this plaintiff which would allow a citizen of Massachusetts to sue in this court the New York, New Haven & Hartford Railroad by styling it a corporation of Connecticut, and, by parity of reasoning, would allow the railroad, by styling itself a corporation of Connecticut, to sue a citizen of Massachusetts in this court, would ignore the railroad's real organization, and would make decisions in Ohio R. R. v. Wheeler and other considered cases practically ineffective, so far as a plaintiff is concerned.

In Railroad Co. v. Vance, 96 U. S. 450, 24 L. Ed. 752, the plaintiff, the Indianapolis & St. Louis Railroad Co., was a corporation of the first class (see Gerling v. Railroad Co., 151 U. S. 677, 14 Sup. Ct. 533, 38 L. Ed. 311; Pennsylvania R. Co. v. St. L. A. & T. R. Co., 118 U. S. 298, 6 Sup. Ct. 1094, 30 L. Ed. 83), incorporated in Illinois and Indiana. Alleging itself to be a corporation of Indiana, it brought suit in the Circuit Court in Illinois to restrain the collection of taxes

by a citizen of that state. If the corporation was to be deemed a citizen of Illinois, and in the federal courts of Illinois as a corporation solely of Illinois, the bill should have been dismissed for want of jurisdiction. The court entertained the bill, but dismissed it on the merits, holding that the corporation really taxed was the corporation of Illinois, and so the Indiana corporation had no cause of complaint. As the question of jurisdiction was not argued, and as the matter was not discussed or referred to in the opinion, the authority of the case in favor of the plaintiff is not great.

The plaintiff relies principally upon Nashua & Lowell Railroad Corp. v. Boston & Lowell Railroad Corp., 136 U. S. 356, 10 Sup. Ct. 1004, 34 L. Ed. 363. In that case the Circuit Court in Massachusetts took jurisdiction of a suit brought by the plaintiff, alleging itself to be a corporation of New Hampshire, against a citizen of Massachusetts. If the plaintiff in the Nashua & Lowell Case was a corporation like the defendant in the case at bar, then the former case is an authority binding upon this court in favor of the plaintiff here. This court must, therefore, inquire what was deemed by the Supreme Court to be the nature of the corporation plaintiff in the Nashua & Lowell Case. As the question concerns the true intent of a decision of the Supreme Court, this court must inquire what construction the Supreme Court put upon the acts of incorporation in the Nashua & Lowell Case, rather than construe those acts for itself. The question first put is hard to answer, yet upon its answer the decision here is likely to turn. If the plaintiff in the Nashua & Lowell Case was held by the Supreme Court to be a corporation different in kind from the defendant here, that case has little or no bearing upon this.

New Hampshire in 1835, and Massachusetts in 1836, each created a corporation to build a railroad exclusively in the state of its creation, connecting at the boundary. Each of these corporations was styled the Nashua & Lowell Railroad. The first was clearly a corporation of New Hampshire and of no other state; the second a corporation of Massachusetts and of no other state. In 1838 the Legislature of Massachusetts passed an act providing that:

"The stockholders of the Nashua & Lowell Railroad Corporation, incorporated by the Legislature of the state of New Hampshire in the year one thousand eight hundred and thirty-five, are hereby constituted stockholders of the Nashua and Lowell Railroad Corporation, incorporated by the Legislature of this commonwealth in the year one thousand eight hundred and thirty-six; and the said two corporations are hereby united into one corporation by the name of the Nashua and Lowell Railroad Corporation; and all the tolls, franchises, rights, powers, privileges and property granted, or to be granted, acquired or to be acquired, under the authority of the said states, shall be held and enjoyed by all the said stockholders in proportion to their number of shares in either or both of said corporations." St. 1838, p. 378, c. 96.

The operation of this act was made conditional upon the passage of a similar act by New Hampshire, and upon acceptance by the stockholders. Somewhat later, in the same year, New Hampshire passed a similar act. This provided, among other things, "that whereas the Legislature of the commonwealth of Massachusetts have passed a subsisting act, substantially similar, uniting two said corporations, this act shall be in force when the same shall have been accepted by

the stockholders of each and both said corporations, at a meeting to be called for that purpose, at which meeting, said stockholders may vote to ratify and render valid in the united corporations, all former proceedings, which would have been valid in said corporations respectively, and the same shall be as binding on the united corporations, as if adopted separately by each." Also that, "after said corporations shall be united, according to the provisions of this act, they shall be one corporation by the name of the Nashua & Lowell Railroad Corporation." (Material portions of the New Hampshire statute are omitted at 136 U. S. 360, 10 Sup. Ct. 1004, 34 L. Ed. 363.)

Many years after the passage of the acts last referred to, the Nashua & Lowell Railroad Company, styling itself "The Nashua and Lowell Railroad Corporation, a corporation duly established by the laws of the states of Massachusetts and New Hampshire," entered into a contract with the Boston & Lowell Railroad Company, a Massachusetts corporation, and to enforce the provisions of that contract a bill in equity was brought by the Nashua & Lowell Railroad Company, styling itself a corporation of New Hampshire. The defendant objected to the jurisdiction, but the court sustained it, and granted a part of the relief prayed for in the bill.

What was the corporation plaintiff? Did the Supreme Court deem it to be the original New Hampshire corporation created in 1835, or a corporation created by the act of 1838? If the latter, then it was a corporation essentially like the defendant in the case at bar, and the Nashua & Lowell Case governs the decision of the case at bar. If the former, then it was a corporation quite different from this defendant and the Nashua & Lowell Case has little or no application here. In the opinion of the court Mr. Justice Field observed:

"It does not appear, so far as disclosed by the record, except in the allegations of the defendant, that there was any formal acceptance of this act (the New Hampshire act of 1838) by the stockholders of the two corporations; but it would seem that the corporations acted upon its supposed acceptance, for the defendant pleaded to the jurisdiction of the court on the ground that, by the legislation mentioned, the complainant was not a corporation of New Hampshire, and consequently a citizen of that state, but was a corporation of Massachusetts, and thus a citizen of that state." 136 U. S. 371, 10 Sup. Ct. 1006, 34 L. Ed. 363.

And again:

"Replications were duly filed to the answers, the effect of which was to deny the allegations respecting the acceptance of the acts having for their object the union of the two corporations, and those allegations were entirely unsupported by the evidence or by anything in the record, and neither in the final decree of the court nor in its opinion was any allusion made to the subject. The only evidence bearing upon the question is found in the legislation of the two states, New Hampshire and Massachusetts, and it is plain, as already stated, that no legislation of Massachusetts could possibly affect the existence of the complainant as a corporation of New Hampshire, or its character as a citizen of that state."

How far the court deemed the statutory acceptance to have been given does not appear except from the language above quoted. Yet upon the issue of consolidation or no consolidation, of acceptance or no acceptance, the question of jurisdiction might turn. If the consolidating act of New Hampshire was not accepted, and if the plaintiff

were deemed the original New Hampshire corporation of 1835, the jurisdiction of the court was clear, as that corporation, wherever its property was situated, was created by New Hampshire, and by New Hampshire alone. If, however, the consolidating acts were deemed to have been accepted, it would seem that the "one corporation," the "united corporation," therein mentioned, must be deemed to be a new corporation, different both from the New Hampshire corporation of 1835 and from the Massachusetts corporation of 1836. This would appear more plainly if the railroad corporation of 1838, created by the consolidating acts of Massachusetts and New Hampshire, had been given a name different from that of its component parts, as was the case with the defendant at bar, when it was formed from component corporations by the consolidating acts of Massachusetts and Connecticut. On this point the Supreme Court further said: "The plaintiff was created a corporation by the Legislature of New Hampshire in June, 1835. It is therefore to be treated as a citizen of that state." 136 U. S. 370, 10 Sup. Ct. 1006, 34 L. Ed. 363. This was the date of the incorporation of the original New Hampshire company, and the statement is a plain declaration that the plaintiff was the same original corporation which once had an existence in New Hampshire and nowhere else. Again, the Supreme Court said:

"There are many decisions both of the federal and state courts which establish the rule that, however closely two corporations of different states may unite their interests, and though even the stockholders of the one may become the stockholders of the other, and their business be conducted by the same directors, the separate identity of each, as a corporation of the state by which it was created, and as a citizen of that state, is not thereby lost." 136 U. S. 375, 10 Sup. Ct. 1008, 34 L. Ed. 363.

Here, again, the court seems to imply that the plaintiff in the suit before it was the original corporation of 1835. See, also, the quotation from Farnum v. Blackstone Canal Co., 1 Sumn. 46, 62, Fed. Cas. No. 4,675, at 136 U. S. 376, 10 Sup. Ct. 1008, 34 L. Ed. 363. And a little earlier in the opinion it was said:

"The act of New Hampshire of 1838, whilst in terms authorizing the two corporations to unite, did not confer any new franchise or right upon either of them. All that it did was to permit the funding or conversion of the separate interests of each stockholder in each corporation into a common or joint undivided interest in both, and to declare that after the two corporations were united all property owned by either should be considered the joint property of the stockholders of both. There is nothing in these provisions looking to any abandonment of its corporate character as a creation of New Hampshire or its citizenship of that state." 136 U. S. 375, 10 Sup. Ct. 1008, 34 L. Ed. 363.

But if the New Hampshire act of 1838 created a new corporation, whatever its citizenship, then the act did confer a new franchise and a new right. It did not convert the interest of each stockholder in each corporation into a common interest in both, but the conversion was into an interest in a new corporation. To what the pronoun "its" in the last sentence of the quotation refers is not quite clear, but apparently to the New Hampshire corporation of 1835. The sentence just quoted, therefore, implies strongly that the plaintiff was that corporation, and so entitled to bring suit in a federal court in Massachusetts.

Still again the court said:

"A more satisfactory answer [to the defendant's plea to the jurisdiction] would, perhaps, have been that whatever effect may be attributed to the legislation of Massachusetts in creating a new corporation by the same name with that of the complainant, or in allowing a union of its business and property with that of the complainant, it did not change the existence of the complainant as a corporation of New Hampshire, nor its character as a citizen of that state, for the enforcement of its rights of action in the national courts against citizens of other states. Indeed, no other state could by its legislation change the character of that corporation, however great the rights and privileges bestowed upon it. The new corporation created by Massachusetts, though bearing the same name, composed of the same stockholders, and designed to accomplish the same purposes, is not the same corporation with the one in New Hampshire. Identity of name, powers, and purposes does not create an identity of origin or existence, any more than any other statutes, alike in language, passed by different legislative bodies, can properly be said to owe their existence to both. To each statute and to the corporation created by it there can be but one legislative paternity." 136 U. S. 372, 373, 10 Sup. Ct. 1007, 34 L. Ed. 367.

This language requires careful scrutiny. What was the "new corporation" created by Massachusetts, and when was it created? If the reference is to a corporation created by Massachusetts in 1838, most of the language just quoted is altogether inapplicable. The business and property of the Massachusetts corporation of 1838 were never united with those of any other corporation. The union of business and property, so far as there was any, was that of the old Massachusetts corporation of 1836 with that of the New Hampshire corporation of 1835. This language also gives reason to believe that the Supreme Court conceived the plaintiff in the case before them to be the New Hampshire corporation of 1835, and "the new corporation created by Massachusetts" to be the corporation of 1836. It is true that upon this supposition the statement of the court that the Massachusetts corporation was designed to accomplish the same purposes as some New Hampshire corporation was erroneous, as applied to the Massachusetts corporation of 1836. The Massachusetts corporation of 1836 was organized to build a railroad from Lowell to the state line and no further. This was not the purpose of any corporation created at any time by the state of New Hampshire, but, in the confusion created by the constant use of the same corporate name to designate different corporations, the statement just mentioned, which was not material to the decision, may well have been an oversight. Upon the whole, it seems that the Supreme Court, though perhaps not with complete logical consistency, treated the plaintiff as being a corporation created in 1835 by New Hampshire, and by New Hampshire alone. If this be true, then the Nashua & Lowell Case has little or no application to the case at bar. The two corporations of New Hampshire and Massachusetts, operating together, were held by the Supreme Court to constitute neither a corporation of the first nor of the second class, but an anomalous union of two corporations created for distinct purposes by different states, which had been united as to their business and property, but not as to their corporate existence. The plaintiff Nashua & Lowell Railroad Company was thus treated as a corporation analogous to the Hartford & Springfield Railroad or the New York & New Haven Railroad, and not to the defendant

here. It is true that this decision thus interpreted disregards the language of the statutes both of Massachusetts and of New Hampshire, in so far as those statutes provided that the two corporations should be united into "one corporation" or a "new corporation," but upon any construction of the decision the statutes were thus disregarded by the court to that extent.

Upon any construction which admits the existence of two corporations owning the same tangible property difficulties other than that concerning the jurisdiction must arise. If the federal courts of Massachusetts can take cognizance of the separate existence of both corporations, with which corporation did the Boston & Lowell Railroad contract? Plainly not with the New Hampshire corporation rather than with that of Massachusetts. What would have been the effect upon the complainant's bill in the federal court, if the Nashua & Lowell Railroad, suing as a Massachusetts corporation, had at the same time brought a bill in equity for the same purpose against the defendant in the state court of Massachusetts? These questions were urged upon the Supreme Court, and, though not discussed in the opinion, they must have been considered. But this difficulty is equally applicable to a construction of the decision which treats the plaintiff as a corporation created in 1838 rather than as one created in 1835. That the construction herein put upon the Nashua & Lowell Case has not hitherto been suggested may be admitted, but the case has been little noticed by the Supreme Court, and has not been critically considered by any other court. It has even been cited as an authority upon the status of corporations of the second class. Hollingsworth v. Southern R. R. (C. C.) 86 Fed. 353, 355. The cases in the state courts cited by Mr. Justice Field go no farther than to determine that each state which aids in creating one of these joint corporations can treat that corporation as its own creature. "They (the two Legislatures) cannot so fuse themselves into a single sovereignty, and as such create a body politic which shall be a corporation of the two states, without being a corporation of each state or of either state." Quincy Railroad Bridge Co. v. Adams Co., 88 Ill. 615, 619, quoted in 136 U. S. 380, 10 Sup. Ct. 1004, 34 L. Ed. 363. "There may be separate consent given for the consolidation of corporations separately created, but when the two unite they severally bring to the new entity the powers and privileges already possessed, and the consolidated company simply exercises in each jurisdiction the powers the corporation there chartered had possessed and succeeds there to its privileges." Chic. & Northwestern Railroad Co. v. The Auditor General, 53 Mich. 91, 18 N. W. 586, quoted in 136 U. S. 381, 10 Sup. Ct. 1004, 34 L. Ed. 363.

Though the decisions of the Supreme Court in Railroad v. Vance and in the Nashua & Lowell Case be not deemed in point for the plaintiff, there are cases in the inferior federal courts which are directly in his favor. In St. Louis Railroad Co. v. Indianapolis Railroad, 9 Biss. 144, Fed. Cas. No. 12,237, the plaintiff was deemed by the Circuit Court to be a corporation of the first class, incorporated both in Illinois and Indiana, and yet, by describing itself as an Illinois corporation, it was held entitled to bring suit in the Circuit Court in Indiana against a citizen of that state. In his opinion Judge Drum-

mond recognized and discussed the argument against the jurisdiction stated above, viz., that, if the corporations of Indiana and Illinois were deemed separate corporations, then they were both parties to the contract sued upon, and so, upon the ordinary principles of equity, should have been joined. He therefore suggested that the Indiana corporation be made a party defendant, though he deemed the amendment unnecessary. But the Indiana corporation was interested in the controversy, not as defendant, but as complainant, and the parties to a suit in equity cannot be arranged without regard to their real interests, in order to give jurisdiction to a federal court. Strawbridge v. Curtiss, 3 Cranch, 267, 2 L. Ed. 435; Barney v. Baltimore City, 6 Wall. 280, 18 L. Ed. 825; Blacklock v. Small, 127 U. S. 96, 104, 8 Sup. Ct. 1096, 32 L. Ed. 70; The Removal Cases, 100 U. S. 457, 25 L. Ed. 593. Moreover, even if this arrangement of parties were possible in a bill in equity, it would be impossible in a suit at law. Judge Drummond's solution of the difficulty stated above was not a happy one.

When the case was considered by the Supreme Court under the title of Pennsylvania Railroad Co. v. St. Louis Railroad Co., 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83, the corporation originally plaintiff was, for jurisdictional purposes, decided to be a corporation only of Illinois; that is to say, a corporation of the second class. The Supreme Court made full inquiry concerning the nature of the corporation—an inquiry which was quite unnecessary if the general principles of law declared by the Circuit Court were sound. The Circuit Court had held (1) that it had jurisdiction of a suit brought by a corporation of the first class, and (2) that the corporation was of the first class. If the first proposition was sound, the Supreme Court need not have considered the second, for that the court had jurisdiction of a suit brought by a corporation of the second class was undisputed. It seems, therefore, that the Supreme Court then considered the first proposition laid down by the Circuit Court to be doubtful, and that the federal jurisdiction over a suit brought under the circumstances by a corporation of the first class was at least doubtful. Pennsylvania Railroad v. St. Louis Railroad was decided before the Nashua & Lowell Case.

The same course was taken in Louisville Railway Co. v. Louisville Trust Co., 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081, decided long after the Nashua & Lowell Case. There the Circuit Court of Appeals had held that the plaintiff, even if it was jurisdictionally a corporation both of Indiana and Kentucky, yet, by styling itself a corporation of Indiana, could maintain suit in the Circuit Court in Kentucky against a citizen of Kentucky. Louisville Trust Co. v. Louisville, N. A. & C. R. Co., 75 Fed. 433, 22 C. C. A. 378. In his opinion Judge Taft cited and relied upon the Nashua & Lowell Case, though he relied also upon St. Louis R. R. v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802. If his view of the law was correct, whether the plaintiff was a corporation of the first or second class was irrelevant. If it was of the first class, it could sue under the Nashua & Lowell Case; if of the second, under St. Louis R. R. v. James. Yet the Supreme Court fully considered the facts in order to determine

that the plaintiff was a corporation of the second class, and not of the first; that is to say, for jurisdictional purposes a corporation of Indiana alone, and not a corporation of Kentucky. "Nor could it [the plaintiff] have been sued as a corporation of Kentucky in any court of the United States." 174 U. S. 563, 19 Sup. Ct. 821, 43 L. Ed. 1081. This consideration was altogether unnecessary if a corporation of the first class could bring the suit in question, and the action of the Supreme Court implies a doubt of the correctness of the plaintiff's proposition. In the opinion no reference was made to the Nashua & Lowell Case. Neither the decision of the Circuit Court in the St. Louis R. R. Case, nor that of the Circuit Court of Appeals in the Louisville R. R. Case, however, was reversed by the Supreme Court. The first of these cases, therefore, and both of them, it may be, stand as authority for the plaintiff in the case at bar, although the Supreme Court went out of its way to decide them on other grounds, instead of simply affirming the decision of the lower courts upon the authority of the principle declared in the Nashua & Lowell Case. In still other cases, while the question here presented may not have been involved in the decision, yet inferior federal courts have intimated, more or less plainly, their agreement with the contention of this plaintiff. See Uphoff v. Chicago, etc., R. (C. C.) 5 Fed. 545, 550; Chicago, etc., R. v. Lake Shore R. R. (C. C.) 5 Fed. 19, 21; St. Louis R. R. v. Stephens, 47 Fed. 530; Chic. & N. W. R. v. C. & P. R., 6 Biss. 225, Fed. Cas. No. 2,665. See, also, the note to Johnson v. P. W. & B. R. R. (C. C.) 9 Fed. 6, 7, cited with apparent approval by Judge Lowell in Horne v. B. & M. R. R. (C. C.) 18 Fed. 50, 51. Yet it would be possible to take sentences from the opinion of that learned judge on page 52 which seem to make for the defendant's contention. Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp. (C. C.) 8 Fed. 458, is the case which was approved by the Supreme Court as far as the jurisdiction is concerned. In Western & Atl. R. v. Roberson, 61 Fed. 592, 9 C. C. A. 646, the defendant was held to be a corporation purely of Georgia. "The corporation sued is exclusively a Georgia corporation, never having been made a Tennessee corporation. Neither has the state of Georgia made the Tennessee corporation, as such a corporation, a corporation of the state of Georgia. Neither is it a case of consolidation of a corporation of one state with a corporation of another state under like authority from each state." 61 Fed. 598, 599, 9 C. C. A. 653. The case illustrates the difficulty of distinguishing between one kind of interstate corporation and another.

There are decisions of the inferior federal courts which support directly the defendant's contention. In Baldwin v. Chicago & Northwestern Ry. Co. (C. C.) 86 Fed. 167, suit was brought in the Circuit Court in Michigan by a citizen of Michigan against a corporation which was described as "the Chicago & Northwestern Railway Company, a corporation created and existing under and by virtue of the laws of the state of Illinois, and a citizen of Illinois." (This fact does not appear in the Federal Reporter.) The court there said:

"It may be added that it is the necessary and logical corollary of the doctrine on which the decisions in the above cases rest, namely, that the court

looks only to the law of the state in which the suit is brought for the purpose of determining the citizenship of the corporation in such cases, that a citizen of one of the states in which the corporation exists cannot maintain a suit against it in the federal courts of the state whereof he is himself a citizen." 86 Fed. 168.

This case is cited with approval in Harvey v. Raleigh R. R. (C. C.) 89 Fed. 115. Burger v. Grand Rapids R. (C. C.) 22 Fed. 561, is also in point, and the cases which take the other view are there discussed. In Missouri Pac. R. v. Meeh, 69 Fed. 753, 16 C. C. A. 510, 30 L. R. A. 250, decided by the Circuit Court of Appeals for the Eighth Circuit, the defendant was incorporated by the states of Missouri, Kansas, and Nebraska, and was sued as a citizen of Missouri in the Circuit Court of Kansas by a citizen of the latter state. The court held that it had no jurisdiction, and dealt in its opinion with the Nashua & Lowell Case as follows:

"The decisions in Nashua & L. R. Corp. v. Boston & L. R. Corp., 136 U. S. 356, 365, 10 Sup. Ct. 1004, 34 L. Ed. 363, and in Muller v. Dows, 94 U. S. 444, 447, 24 L. Ed. 207, do not conflict with the prior decisions of the Supreme Court of the United States, for in the former of these cases the New Hampshire corporation, the Nashua Railroad, which had been created a corporation of the state of Massachusetts, sued the Massachusetts corporation in the Circuit Court of the United States for the District of Massachusetts to adjust certain differences that had arisen, growing out of a contract in which the two companies had dealt with each other as separate legal entities, and it was held that the suit could be maintained."

Apparently the Court of Appeals supposed that in the Nashua & Lowell Case the corporations consolidated were the Nashua & Lowell Railroad, a corporation of New Hampshire, and the Boston & Lowell Railroad, a corporation of Massachusetts, and that the suit was upon a contract in which the two component corporations had dealt with each other. As has been shown, the facts were quite otherwise, and the explanation of the decision of the Supreme Court given in Mo. Pac. R. v. Meeh, 69 Fed. 753, 16 C. C. A. 510, 30 L. R. A. 250, therefore fails. In an earlier case the Circuit Court in Nebraska had said of a corporation of the first class:

"It is a corporate trinity, having no citizenship of its own distinct from its constituent members, but a citizenship identical with each. By the consolidation the corporation of one state did not become a corporation of another, nor was either merged in the other. The corporation of each state had a distinct legislative paternity, and the separate identity of each as a corporation of the state by which it was created, and as a citizen of that state, was not lost by the consolidation. Nor could the consolidated company become a corporation of three states without being a corporation of each or of either. While the consolidated corporation is a unit, and acts as a whole in the transaction of its corporate business, it is not a corporation at large, nor is it a joint corporation of the three states. Like all corporations, it must have a legal dwelling place. Every corporation, not created by acts of Congress, dwells in a state. This consolidated corporation dwells in three states, and is a separate and single entity in each." Fitzgerald v. Mo. Pac. Ry. Co. (C. C.) 45 Fed. 812, 815.

See, also, Winn v. Wabash R. (C. C.) 118 Fed. 55.

Most of the cases decided in the state courts which deal with the status of corporations of the first class are concerned altogether with taxation or with the rights of the several states to control the operation of the railroad within their borders. This right is admitted,

even as to corporations of the second class acting in states where their incorporation gives no jurisdictional status, and a fortiori is effective as to corporations of the first class in states where their incorporation does give them such status. In Tourville v. Wabash R., 148 Mo. 614, 50 S. W. 300, 71 Am. St. Rep. 650, the railroad defendant was apparently a corporation of the first class. It had been garnished in Illinois, and tried to set up its payment under the judgment there rendered in defense of an action brought in Missouri by its employé and original creditor, a citizen of that state. The court said:

"So that in the defendant we have two legal entities—one a corporation and citizen of Illinois, the other a corporation and citizen of Missouri. With the former the plaintiff had no dealings, and it owed him nothing. The latter became indebted to him in the sum of $81 for wages earned in Missouri, and under the law thereof exempt from attachment, execution, and garnishment; and, while it may be difficult to see how this debt due the plaintiff from the Wabash Railroad Company of Missouri could be impounded in the courts of Illinois by the service of garnishment process on the Wabash Railroad Company of Illinois, the ruling of the Court of Appeals was not based upon the ground that it was not so subject."

The language illustrates the confusion into which the court fell in attempting to work out logically the corporate fiction. Being earned in Missouri, the plaintiff's wages were held not to have been paid by the payment made by the Illinois corporation. The Illinois court, on the other hand, seems to have deemed that the Illinois corporation also was indebted to the plaintiff, and so the corporation or corporations, "a corporate trinity," or "separate corporations," paid out twice the number of material dollars actually owed. At that point the fiction failed to correspond to the facts.

Throughout the discussion we must bear in mind that we are dealing with fictions, and not with concrete facts. Corporate personality and existence are themselves fictions, and the citizenship or locality of a corporation is the fiction of a fiction. As developed by the federal courts, the citizenship of a corporation rests upon a conclusive presumption, which in hardly any case corresponds to the facts. In a corporation formed by consolidation there is but one line of railroad, of which one individual is president, and one other individual general manager. One set of individual directors sits around one table. Whether the organization is deemed (1) a single corporation, (2) one corporation with several aspects, (3) several separate corporations of which only one is recognized in each of the creating states, or (4) several separate corporations each recognized everywhere, is of no importance, except for the practical results which follow the adoption of one fiction or another. If the fourth fiction be selected, any corporation of the first class can sue or be sued in the federal court of any state by proper designation. If this result be desirable, that fiction is the best for jurisdictional purposes, but care must be taken to develop the fiction so as to avoid the unjust results of the Missouri case. It is not a question of justice, but of ultimate convenience, in what court a corporation may sue or be sued; it is injustice, and not mere inconvenience, that an organization of any kind shall be compelled to pay its debts twice over. In selecting a fiction, moreover,

it may sometimes be wise to take one which has some slight inconveniences in practical results, if its logical development is generally convenient, rather than another which has a slight advantage in some respect, but whose logical development would lead to such injustice that exceptions and subfictions must be numerous and strained. If the fourth fiction above mentioned be adopted, then it must be developed so as to permit any one of the several corporations, as plaintiff or defendant, to stand for and represent them all, and the satisfaction of a judgment recovered by or against one of them must bar the collection of the same claim by or against any other.

In the case at bar the court has to determine what sort of fiction is applicable to the defendant for the purposes of the jurisdiction of the federal courts. Upon the whole, that fiction which treats a corporation of the first class, so-called, as one corporation with several aspects, seems to me in best agreement with the concrete facts, and the logical development of that fiction appears to produce the most convenient practical result. By this fiction, an organization like the defendant, maintaining a single system of railroad in many states, and chartered by each of those states so as to make it jurisdictionally a citizen of each of the states, is deemed to be one corporation, treated in each of the incorporating states as a citizen of that state and of that state alone, however it may be described in some foreign state where it has no incorporation. This theory is supported by one or two recent decisions of one Circuit Court of Appeals, and by two decisions of two Circuit Courts. For the reasons already stated, the Nashua & Lowell Case is not deemed in point, and the reasoning of the Circuit Court of Appeals in the Louisville Case and of the Circuit Court in 9 Biss. 144, Fed. Cas. No. 12,237, is shown to have been doubted by the Supreme Court on appeal.

The plea to the jurisdiction is sustained.