# Charles Friend & Company, Appellant, v. Goldsmith & Seidel Company, Appellee.

## Gen. No. 26,422.

1. ATTACHMENT—*effect of use of "Co." in designating defendant.* The abbreviation of the word "company," the last word in defendant's corporate name, so as to read "Co.," *held* not to permit a holding that there had not been a substantial compliance with section 3 of the Attachment Act (Cahill's Ill. St. ch. 11, ¶ 3), relating to the manner of designating attachment defendants.

2. APPEAL AND ERROR—*presumption as to holding that special appearance was properly filed by attorneys.* Although it has been held that a special appearance in an attachment suit for the purpose of contesting the jurisdiction of the court cannot be filed by an attorney, the appearance in question, signed by an attorney, was held sufficient, on appeal from the municipal court of Chicago, where a solution of the question would have depended upon an examination of the rules of the municipal court and only one of such rules was in the record, as the Appellate Court presumed that the trial court was authorized under its rules to hold that such appearance was properly filed by defendant's attorneys.

3. CORPORATIONS—*what is status of foreign corporations transacting business in State.* The intent of the legislature in enacting the General Corporation Act of 1919 (Cahill's Ill. St. ch. 32, ¶¶ 1-158) was to permit foreign corporations (¶¶ 84, 95) to transact business in this State upon the terms provided, and such corporations were granted all the rights and privileges conferred on domestic corporations and were subjected to all the restrictions and limitations imposed upon the latter.

4. ATTACHMENT—*when foreign corporation cannot be attached on ground of nonresidence.* A foreign corporation, entitled to transact business in Illinois, cannot now be attached on the ground of nonresidence.

5. CORPORATIONS—*trend of judicial opinion as to right of foreign corporations to transact business in State.* The trend of judicial opinion not only in, but beyond, this State seems to favor a construction of the law which would place corporations, with respect to a right to transact business in a State foreign to that of their creation, upon precisely the same footing as domestic corporations.

Appeal from the Municipal Court of Chicago; the Hon. C. F. McKINLEY, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed March 7, 1922.

LEE J. FRANK and MARY LEE COLBERT, for appellant.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON, for appellee; LAWRENCE A. COHEN, RALPH KALISH and HENRY JACKSON DARBY, of counsel.

MR. PRESIDING JUSTICE DEVER delivered the opinion of the court.

An attachment suit was begun in the municipal court of Chicago by the plaintiff against Goldsmith & Seidel Company, a corporation, to recover $1,031.41 which the plaintiff charged in his statement of claim was an overcharge paid by plaintiff for hides sold it by defendant.

The attachment writ was served on Guggenheim Bros., a corporation, as garnishee. The defendant by its attorneys filed its special appearance for the purpose of contesting the jurisdiction of the court, and a motion was made to quash the attachment for the reasons, as stated in the brief filed by plaintiff, that the defendant, organized and created under the laws of Missouri, had obtained a license to do business in the State of Illinois; that it had complied with all of the provisions of the Foreign Corporation Act and had kept, after obtaining its license, a duly authorized agent in this State upon whom service of process might be had; that it is now engaged in doing business in this State pursuant to its said authority and that it has at all times since April 16, 1918, maintained an office and place of business in this State. The motion to quash the writ of attachment was sustained, the garnishee was released and discharged, and on motion of defendant plaintiff's suit was dismissed and a judgment entered in favor of the defendant for costs. Plaintiff seeks to reverse this judgment by appeal to this court.

Plaintiff insists that the record contains no evidence that defendant was regularly authorized to do busi-

ness in the State of Illinois. The license granted defendant authorizes "Goldsmith & Seidel Company, Hides, Furs, Wool and Pecans" to do business in Illinois.

Section 3 of the Attachment Act (Cahill's Ill. St. ch. 11, ¶ 3) provides:

"It shall be sufficient, in all cases of attachment, to designate defendants by their reputed names, by surnames, and joint defendants by their separate or partnership names, or by such names, styles or titles as they are usually known."

The words "hides, furs, wool and pecans" following the name of the corporation in the license are merely descriptive of its business. The plaintiff in bringing its suit gave the defendant the name of "Goldsmith & Seidel Co." The abbreviation of the word "company," being the last word in defendant's true name, does not disclose such a material difference between the name of the defendant as it appears in the license and as shown by the writ as would permit a holding that there had not been a substantial compliance with section 3 of the Attachment Act.

It is our opinion that, on the record before us, defendant's special appearance, filed on its behalf by its attorneys, is sufficient. While it has been held that such appearance cannot be filed by attorney (*Mineral Point R. Co. v. Keep,* 22 Ill. 9), a solution of the question raised would depend upon an examination of the rules of the municipal court. Only one of these rules is in the record and this court will therefore presume that the trial court was authorized under the rules of that court to hold that defendant's special appearance was properly filed by its attorneys.

Paragraph 3335, vol. 2, p. 1883, J. & A. Ill. St. (Cahill's Ill. St. ch. 37, ¶ 411) provides that:

"No assignment of error in this court shall be allowed which shall call in question the decision of the municipal court in respect to any matter pertaining

to the practice in that court." *Frisbie v. Randall,* 170 Ill. App. 308.

A main contention of plaintiff is that a foreign corporation licensed to do business in the State of Illinois is subject to attachment as a nonresident. This question does not appear to have been decided by the Supreme Court of this State, although it is directly considered in two cases in Illinois Appellate Courts, the earlier of which is the case of *Voss v. Evans Marble Co.,* 101 Ill. App. 373, where the court held that a corporation organized under the laws of the State of Maryland, but which had obtained a license to do business in Illinois and which kept an office and had property in this State and was doing business here, could be sued in attachment as a nonresident. In that case the court said:

"The fact that the defendant was permitted to and did business in this State does not in the absence of a statute make it a resident of Illinois. It could thereby get no greater rights than a natural person."

In the latter case of *Burr v. Co-operative Const. Co.;* 162 Ill. App. 512, this court, speaking through Mr. Justice Brown, held that a foreign corporation doing business in this State pursuant to license, it having complied with the statutes of this State relative to its doing business here, is not a nonresident whose property is subject to attachment upon the grounds of nonresidency.

Under section 26 of an Act entitled, "An Act Concerning Corporations," in force July 1, 1872, foreign corporations and their agents and officers doing business in this State are subjected to all "the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers."

Section 1 of an Illinois statute relating to foreign corporations, in force July 1, 1897, provides that foreign corporations before being permitted to transact

business in this State shall have and maintain a public office in the State for the transaction of its business, where service of process may be had upon it. This section also provided that such corporations were to be subjected to all the liabilities, restrictions and duties imposed by law upon domestic corporations.

The laws which have been referred to, as well as others, enacted prior to the passage of the General Corporations Act of 1919, indicate a purpose on the part of the legislature to permit foreign corporations to transact business in this State under certain limitations, subject to all the liabilities, restrictions and duties imposed by law upon domestic corporations.

Section 87 of the General Corporation Act of 1919 (Cahill's Ill. St. ch. 32, ¶ 87) imposed upon foreign corporations licensed to do business in this State the duty to keep on file in the office of the Secretary of State certain specified information with reference to its officers, organizations, etc., the name and address of an agent upon whom legal process might be served, etc. Section 95 of this Act (Cahill's Ill. St. ch. 32, ¶ 95) provides that:

"Foreign corporations entitled to transact business in this State at the time this Act takes effect (except banking, insurance, building and loan and surety companies), shall be entitled to all the rights and privileges and shall be subject to all the limitations, restrictions, liabilities and duties as are prescribed herein for foreign corporations admitted to transact business in this State under this Act."

Section 84 of the Act (Cahill's Ill. St. ch. 32, ¶ 84) provides that a foreign corporation admitted to do business in the State under the act "shall enjoy the same, but no greater, rights and privileges and be subjected to all the liabilities, restrictions, duties and penalties imposed upon domestic corporations of like character, and to the same extent as if it had been

formed under the laws of this State to do the business set forth in its certificate of authority."

The present suit was begun after the passage of the 1919 act. It is asserted with much force by counsel for appellee that the trend of legislative enactment tends to disclose a legislative purpose to grant to foreign corporations a right to do business in this State under the same limitations and restrictions, and with the same rights and privileges, as are imposed upon or granted to domestic corporations. We are not quite ready to concede the point that the act of 1919 and other prior laws were enacted solely for the purpose of extending the rights and privileges to be enjoyed by foreign corporations seeking to do business in this State.

In the case of *Stevens v. Pratt*, 101 Ill. 206, the Supreme Court held that a foreign corporation authorized under its charter to transact a money loaning business might legally transact such business in this State notwithstanding the general incorporation laws there in force prohibited a domestic corporation from engaging in like business. The intent of the legislature seems to have been to confer on foreign corporations which comply with the act the same and no greater rights and privileges as those conferred on domestic corporations. The General Corporation Act of 1919 is a readjustment of the corporation laws of this State. For the first time apparently the act of 1919 specifically granted to foreign corporations seeking to do business in this State, "rights and privileges" such as were given by law to domestic corporations. The intent of the legislature in the enactment of this law was to permit foreign corporations to transact business in this State upon terms provided in the act, and such corporations were granted by the law all of the rights and privileges conferred on domestic corporations and were made subject to all the restrictions and limitations imposed upon the latter.

It is our opinion, therefore, that aside from judicial decisions, the General Incorporation Act of 1919 permitted the defendant corporation to transact business in this State with the same rights and privileges as are conferred by laws upon domestic corporations. One of the rights and privileges enjoyed by a domestic corporation is that its property cannot be attached on grounds of nonresidence.

Counsel for plaintiff devote much of their argument and cite and quote from several authorities in support of a principle laid down in Cook on Corporations (7th Ed.), sec. 1, that "The domicile, residence and citizenship of a corporation are in the State where it is created." This general proposition is well supported by the authorities cited. We do not think, however, that it is available in solving the interesting question under consideration. It may be granted that generally the place of residence of a corporation is the State or place of its creation. But, even so, a further question arises on this record, that is, whether a foreign corporation may legally become so domiciled or "domesticated" in this State as that its property may be relieved from attachment process as in the case of a domestic corporation.

In *Goodwin v. New York, N. H. & H. R. Co.,* 124 Fed. 358, the court said:

"Corporate personality and existence are themselves fictions, and the citizenship or locality of a corporation is the fiction of a fiction."

The trend of judicial opinion not only in but beyond this State seems to favor a construction of the law which would place corporations with respect to a right to transact business in a State foreign to that of its creation upon precisely the same basis as the domestic corporation.

The trial court properly quashed the attachment and discharged the garnishee. The only judgment rendered against plaintiff was for the costs of the at-

tachment. No error is assigned that the trial court erred in not permitting the suit to proceed to final judgment.

The judgment of the municipal court is affirmed.

*Affirmed.*

McSURELY and MATCHETT, JJ., concur.